Shirley A. BER, Plaintiff-Appellant,

v.

Anthony J. CELEBREZZE, Secretary of
Health, Education and Welfare,
Appellee.

No. 312, Docket 28628.

United States Court of Appeals
Second Circuit.

Argued Feb. 11, 1964.

Decided May 25, 1964.

Walter & Tepper, Brooklyn, N. Y. (Julian C. Tepper, Brooklyn, N. Y., of counsel), for appellant.

Joseph P. Hoey, U. S. Atty., Eastern District of New York (Leonard J. Theberge, Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and FRIENDLY, Circuit Judges.

WATERMAN, Circuit Judge.

This appeal is from the United States District Court for the Eastern District of New York in an action brought pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to challenge a determination by a Hearing Examiner acting for the Secretary of Health, Education and Welfare that ap- pellant is not entitled to disability benefits and a disability freeze under Sections 216 and 223 of the Act, 42 U.S.C. §§ 416, 423. The Examiner's decision became that of the Secretary when the Appeals Council of the Department denied review. This action followed. The court below found, on the pleadings, that there was sufficient evidence to support the administrative result, granted the Secretary's motion for summary judgment and dismissed appellant's complaint. The sole question raised on appeal is whether there is substantial evidence in the record to support the Hearing Examiner's decision that appellant failed to establish that her condition satisfied the statutory test of an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." So- cial Security Act, § 223(c) (2), 42 U.S.C. § 423(c) (2). Having examined and studied the administrative record in the case, we answer this question in the negative and reverse the district court and instruct that judgment be entered in favor of appellant.

Appellant, Mrs. Ber, was born in Austria on September 18, 1901, and emigrated to the United States twenty-five years later. She had completed six years of elementary public school in Europe, and, after arriving in this country, supplemented this basic education by attending night high school for three years. Apparently her attendance at night school was primarily for the purpose of learning the English language, and she did not graduate. Mrs. Ber secured full-time employment as a sewing machine operator a week or so after her arrival in this country, and she steadily pursued this occupation and no other for a period of about thirty-five years until March of 1960. She was at that time employed as a sewing machine operator by a lingerie manufacturer in New York City, and, having suffered a slipped disc in the neck, the effects of which were compounded by a nineteen year old arthritic

condition which she said had worsened over the preceding two years, she was forced to quit work. Although on two occasions thereafter she attempted to return to her employment she found it impossible to work at her job because of severe pains in her arms, head, and neck, and she has not been back at work since her final attempt to return in August of 1960.

On September 28, 1960, Mrs. Ber filed an application for disability benefits under the Social Security Act, but the Bureau of Old Age and Survivors Insurance, on March 9, 1961, determined that her condition was not disabling within the meaning of the Act. The Bureau, pursuant to a request made on March 14, 1961 by Mrs. Ber, later reconsidered her case and on June 4, 1961 rendered a decision affirming its original determination. Mrs. Ber then requested and was granted a hearing on her application; and in a decision dated March 12, 1962, the Hearing Examiner concluded that Mrs. Ber was not suffering from any physical or mental impairment of such a nature as to entitle her to Social Security disability benefits. On March 12, 1962, the Appeals Council of the Department denied Mrs. Ber's request for review, and thereupon the Hearing Examiner's decision became the official and final decision of the Secretary of Health, Education and Welfare, which in turn was upheld by the court below.

In his decision the Hearing Examiner pointed to no occupation other than that of a sewing machine operator which Mrs. Ber could have been expected to enter into and to engage in satisfactorily, nor did he give any indication that he had even considered the possibility that she might obtain another type of employment. Thus, though the decision is not explicit on this point, it is apparent that the Hearing Examiner did not refuse to grant Mrs. Ber disability benefits on the ground that, although prevented by her condition from continuing to operate a sewing machine for a living, she was able despite her maladies to engage in some alternative occupation. According to the rule which we established in Kerner v. Flemming, 283 F.2d 916 (2 Cir.1960), and which we have reaffirmed on several later occasions, Rinaldi v. Ribicoff, 305 F.2d 548 (2 Cir.1962), Pollak v. Ribicoff, 300 F.2d 674 (2 Cir.1962), such a determination would have had to be accompanied by a specification of types of employment opportunities actually available to Mrs. Ber, for "mere theoretical ability to engage in substantial gainful activity is not enough if no reasonable opportunity for this is available." Kerner v. Flemming, supra, 283 F.2d at 921. See also Stancavage v. Celebrezze, 323 F.2d 373 (3 Cir.1963); Hodgson v. Celebrezze, 312 F.2d 260 (3 Cir.1963). Therefore, as the Government recognizes on this appeal, the Hearing Examiner's decision could only have been based upon a finding that Mrs. Ber's condition was such that she was able to continue to be a sewing machine operator despite her claims that her condition was so extremely painful that she was required to cease that work and was unsuccessful in two attempts to return to it. We have therefore examined the record to determine whether this finding is supported by substantial evidence from the record taken as a whole.

Mrs. Ber testified that she had been suffering from an arthritic condition for about twenty years prior to the time she ceased to work, but that in the last two years that she worked the pain she suffered had considerably increased. It radiated out from her spine to her neck, head, arms, and legs, becoming so severe as to make even the use of eyeglasses most painful and requiring her to wear a cervical collar and a prosthetic corset. Mrs. Ber testified that she had been treated for a number of years for arthritis at a health center maintained by her union, and that she had been hospitalized because of this ailment from May 4 through May 18 of 1960; that her ailment forced her to sleep with a special board placed under her mattress; and that at times she was even compelled to leave her bed to spend the night in a

beach chair. At the time of the hearing she was taking eight or ten pills a day, including sleeping pills, but found that these gave her little or no relief, and she was often unable to hold objects in her hands. She further testified that she could not perform her normal household duties, and that her husband had to do the cooking and cleaning and all but the very light shopping. Mrs. Ber's work as a sewing machine operator required her to sit at an electric sewing machine and operate it with her feet while steering material that she lifted from a pile beside her through the sewing mechanism at the top of the machine with her hands. She had to get up and leave her machine periodically, and at times had to carry bundles of cloth over to her machine. As we have already noted, she testified that her intense arthritic pains had forced her to stop working in March of 1960 and had thwarted her in two attempts which she thereafter made to return to her job.

In addition to the testimony of Mrs. Ber there was introduced into the record a considerable amount of medical evidence in the form of the written reports of a number of doctors who had examined Mrs. Ber. It was upon this evidence, which we summarize below, that the Hearing Examiner relied when he rejected Mrs. Ber's claims about the severity of her condition and determined that she was not suffering from a physical or mental impairment so severe as to prevent her from returning to her job. We think that this finding lacks substantial evidentiary support. While the medical evidence may perhaps indicate that Mrs. Ber's physical symptoms were of a type which probably would have caused many people considerably less pain than Mrs. Ber suffered, it nevertheless amply supports her complaint that in her particular medical case these symptoms were accompanied by pain so very real to her and so intense as to disable her.

Dr. Harry Grodzicker, Mrs. Ber's personal physician, prepared on September 29, 1960 and April 5, 1961 two medical reports which were submitted into evidence. In the first report Dr. Grodzicker stated that his patient suffered from pain in her neck which radiated down both arms, and that X-rays of the cervical spine showed marked arthritic changes and a slipped disc. Under the heading "Diagnosis" the report stated "arthritis of cervical spine, slipped disc of cervical region, menopause, chronic bronchitis"; and under the heading "Progress" there was a statement that Mrs. Ber's condition was getting progressively worse, that improvement could be expected only in the indefinite future, and that the patient's activity was restricted in that she could not do work requiring the use of her arms. Dr. Grodzicker concluded this report with the following statement: "Pt. has severe pains in cervical spine radiating to shoulders. Was in hosp. in traction & received many injections by a Neurologist. She is in constant pain and is completely disabled. Has generalized arthritis."

In the second report Dr. Grodzicker added little to the information which he had recited in his first report, but emphasized again that "Pt. has constant pain & is now completely disabled." Though he noted that Mrs. Ber's condition was "static," it appears that, because of the wording of the form on which he submitted his report, he took this term to mean lack of any positive progress. This conclusion is supported by statements in his first report and by the fact that, on the day preceding preparation of his second report, he signed the following statement: "This is to certify that Shirley Ber of 145 Hooper St. Bklyn N. Y. is under my care. She suffers from a severe cervical occipito arthritis, with severe neuritis and also suffers with a generalized arthritis which is is [sic] getting progressively worse. She is completely disabled."

In a report dated October 17, 1960, Dr. Maurice E. Wolf, a neurologist, stated that Mrs. Ber was suffering from a cervical osteoarthritis and a slipped disc, and "intense pain in the neck with marked limitation of rotation & turning

of head." Under the report heading "Progress" he reported that relief of pain and increase in mobility would only be possible in the indefinite future, and that a restriction on his patient's activity was "incapacity to work." The report concluded with a notation that Mrs. Ber suffered from "constant and severe pains, incapacity to sleep, incapacity to work." In a second report, prepared ten days later, Dr. Wolf added that his patient had been hospitalized for fifteen days, from May 4, 1960 through May 18, 1960, and while in the hospital had received "daily paravertebral injections followed by manipulation."

Dr. Nathan H. Rachlin, an orthopedist who examined Mrs. Ber on January 10, 1961, stated in a report prepared that day for the New York Department of Social Welfare that Mrs. Ber suffered from clubbing of the digits of both hands and from cervical arthritis which was hypertrophic; that it was also possible that she had a herniated disc; that no atrophy was present and that there was no loss in the use of any of the extremities; that movement of the neck was limited, with the remaining degrees of motion in the neck estimated at ten degrees for rotation right and left, thirty degrees for extension, and five degrees for flexion. In a report also prepared that day for the United States Department of Health, Education and Welfare, Dr. Rachlin reiterated this information in a slightly more detailed form, and stated that Mrs. Ber "wears a stiff supporting collar, moving of the head is limted [sic] and painful" and "the pains are continuous and not relieved by bed rest." Noted in Dr. Rachlin's report was an X-ray examination conducted by Dr. Samuel Weinstein. This X-ray examination of the cervical spine revealed a very slight curvature, a slight narrowing of the joint space between C-5 and C-6, indicating discogenic disease, and some restriction of mobility on extreme flexion. Separate X-ray examinations conducted by Dr. A. LaGreca revealed about the same thing, for he reported mild osteoarthritic changes in the mid-cervi-

cal and lower lumbar bodies and a narrowing of the C-5 and C-6 disc space.

The report of Dr. LaGreca's X-ray examination was submitted in connection with a medical report prepared on October 14, 1960, by Dr. Howard Richman of the health center maintained by Mrs. Ber's union, in which Dr. Richman stated that it was his impression that Mrs. Ber had spondyloarthritis of the entire spine, that the motion of her spine was limited in all directions, and that she was suffering from pain in the back of her neck, spine and chest which was "getting progressively worse." Dr. Meyer Rosenblum, the medical director of the health center, in a letter dated December 27, 1961, reported that Mrs. Ber had been examined on October 18, 1961, and had complained of continuous pain in the neck and over the entire spine, and had indicated that the pain in her hands was so severe that she could not hold scissors or push material through a sewing machine. He stated that she exhibited a normal gait and that movements of the neck were adequate, and that, though reports from the neurology clinic had been essentially negative, Mrs. Ber had experienced pain in response to pressure on the cervical spine. Dr. Rosenblum quoted in his report a statement by the examining neurologist that "Patient does not obey the command to make a fist—'it hurts.'"

Mrs. Ber also submitted to a neuropsychiatric examination by Dr. Alex H. Rubinowitz, the purpose of which was apparently to delve into Mrs. Ber's mental state as well as her physical condition. In his report Dr. Rubinowitz reviewed the history of Mrs. Ber's illness; he noted that she suffered severe and continuous pain in the dorsal and cervical regions of the spine, both hips, the shoulders, wrists and tips of the fingers, and he indicated that he had read reports of other physicians who had examined her. Dr. Rubinowitz's neurological examination revealed no evidence of gross motor weakness or loss of use of any of the extremities, that Mrs. Ber could pick up small objects and button

her clothes, but that she walked very slowly and guardedly because of pain in her back and hips and refused to close her hand tightly because of ensuing pain. His examination also revealed that Mrs. Ber could bend forward and laterally two thirds of the normal distance. After he reviewed Mrs. Ber's general mental status as exhibited during the examination, which review described an otherwise normal person who became moody and depressed at times and whose "attention and concentration was [sic] considerably impaired" because of constant complaints about aches and pains, Dr. Rubinowitz concluded the report of his neuropsychiatric examination with the following statement, one something less than a model of clarity and definiteness: "*Diagnosis* Hypertrophic osteoarthritis of cervical and lumbar spine, fingers and toes (by XRay) with a marked superimposed psychoneurotic, psychogenic functional overlay. *Prognosis* Guarded."

Finally, the record in this case contains the report of a psychologist, C. Leonard Muskin, who examined Mrs. Ber on January 18, 1962. Muskin reported that Mrs. Ber was a person with an average intelligence quotient, who "displayed the characteristics of an emotional overlay" and who "was preoccupied with her physical symptoms." Significantly, Muskin also concluded that Mrs. Ber was a person whose emotional makeup required that she work, whose current emotional problems were due in part to her inability to return to her job, and whose complaints of pain were real albeit "reinforced emotionally": "Work has been meaningful to her because it offered her a means to relieve her tensions through activity and to obtain status as a wage earner. It is probable to assume that her poor adjustment to her illness is because she cannot tolerate changes in her status and lacking insight she has attributed all of her current difficulties to physical symptoms. Therefore, while her complaints are realistic, they are reinforced emotionally." The report concluded with a

suggestion that psychiatric "management" might be in order, as well as counselling of Mrs. Ber's husband to instruct him how to care for his wife's needs.

After reviewing this medical evidence, the Hearing Examiner concluded that "this claimant has not been suffering from any physical or mental impairment or from any combination of impairment so severe as to have prevented her from engaging in any occupation commencing at any time during the effective period of her application for a period of disability and/or disability insurance benefits, filed on September 28, 1960"—a conclusion which, as we have already explained, could only have rested upon a finding that Mrs. Ber was able to return to her job as a sewing machine operator. Though the Hearing Examiner failed to indicate clearly just what particular medical evidence justified his conclusion, it appears that he relied on a finding that Mrs. Ber's objectively observable physical symptoms were of a type ordinarily taken as establishing a mild case of arthritis. Thus, the Hearing Examiner stated in his "review of the evidence" that reports from Mrs. Ber's union's health center indicated that she had mild osteoarthritic changes, that she had exhibited a normal gait during her last examination, and that her arthritic condition by examination and X-ray was "admittedly"—a term poorly chosen in a case so vigorously pressed as this one—mild.

 We feel that the Hearing Examiner erred in so grounding his decision. The critical issue in this case was one which could not be resolved merely by determining what objectively observable physical changes had taken place in Mrs. Ber's bone and muscle structure as a result of her arthritic condition, and then placing these observable changes alongside other similar changes in other persons so as to measure arthritic conditions on an imaginary scale with calibrations ranging from "mild" to

"severe." The ultimate question was whether the arthritic changes which had taken place in Mrs. Ber's body did, in view of her individual physical and mental makeup, cause pain which became so intensely severe to her that, as she testified, it forced her to quit working. Whatever the probative value on this issue of normal reactions to objectively observable physical symptoms, it is common knowledge that physical phenomena of a debilitative nature may work differing degrees of hardship on different persons; and, too, that even where the amount of hardship experienced is roughly the same, persons subjected to it will bear up under it differently because they possess relatively higher or lower thresholds of resistance to the pain the debilitation generates. What one human being may be able to tolerate as an uncomfortable but bearable burden may constitute for another human being a degree of pain so unbearable as to subject him to unrelenting misery of the worst sort. Indeed, inasmuch as the applicable section of the Social Security Act requires a showing of a medically determinable physical *or* mental impairment, even pain unaccompanied by any objectively observable symptoms which is nevertheless real to the sufferer and so intense as to be disabling will support a claim for disability benefits, Page v. Celebrezze, 311 F.2d 757 (5 Cir.1963); Hayes v. Celebrezze, 311 F.2d 648 (5 Cir.1963).

The Hearing Examiner did not expressly indicate that he doubted the truth of Mrs. Ber's complaints of pain, nor did he deal in any systematic fashion with the medical reports which discussed the pain and its effects. Thus, it is difficult for us to determine whether the Hearing Examiner, though he did consider the question of whether Mrs. Ber's body had undergone certain objectively observable physical changes, actually reached the decisive question of whether she was the victim of pain so disabling as to prevent her from functioning as a sewing machine operator, a job which, as we have noted, involves considerable body movement. If the Hearing Examiner did reach this question and did determine that Mrs. Ber's painful condition was not such as to make her eligible for disability benefits, we believe such a determination is not supported by substantial evidence. Apart from the several doctors who X-rayed Mrs. Ber and filed reports setting forth what the X-ray pictures revealed, thereby rendering no judgment as to the genuineness or severity of Mrs. Ber's alleged pain, six medical doctors and one psychologist filed reports on Mrs. Ber's condition. All six medical doctors stated that Mrs. Ber was suffering from cervical arthritis and, significantly, though each of them discussed to a greater or lesser extent Mrs. Ber's complaints of severe pain, not one of them, most of whom presumably had examined the X-ray reports, intimated that he doubted in any way the truth of her claims. Two of the examining physicians, Doctors Grodzicker and Wolf, definitely stated that Mrs. Ber was suffering from pain so severe as to be disabling. Dr. Grodzicker reported that "she is in constant pain and is completely disabled" and noted specifically that Mrs. Ber could not work with her arms, while Dr. Wolf indicated the presence of "intense pain" and concluded one of his reports with a statement that his patient suffered "constant & severe pain, incapacity to sleep, incapacity to work." Dr. Rachlin, though reporting the absence of atrophy and no loss in the use of the extremities, stated that Mrs. Ber's moving of her head was limited and painful and stated in specific terms the degrees of movement remaining in his patient's neck. He also reported that "the pains are continuous and are not relieved by bed rest." Dr. Richman reported a limitation in the movement of the spine and pain in the neck, spine and chest which was getting worse.

In the report of Dr. Rosenblum, Mrs. Ber's complaints of pain were listed in some detail with no indication that her

pain was non-existent, and although neurological examinations were described as "essentially negative" and Mrs. Ber was described as having a "normal gait," Dr. Rosenblum reported a refusal by Mrs. Ber to follow her examiner's instruction to make a fist because of the accompanying pain. The one other report filed by a medical doctor, the one filed by Dr. Rubinowitz after his neuropsychiatric examination of Mrs. Ber, even when interpreted in a manner most unfavorable to Mrs. Ber, was at worst neutral. While Dr. Rubinowitz indicated that Mrs. Ber exhibited no "gross motor weakness" and could pick up small objects, he also reported that her attention and concentration were impaired by her preoccupation with her pain, and—contrary to Dr. Rachlin's report of a normal gait—stated that Mrs. Ber walked very slowly and guardedly because of her pain. Finally, the report of the psychologist who examined Mrs. Ber described a woman who was anything but a malingerer anxious to retire from her job early under the guise of feigned pain. He concluded that Mrs. Ber was a woman who needed her work and who was experiencing some emotional distress because of an inability to return to it; and he described her complaints of pain as "realistic" though "reinforced emotionally."

■■ We think that this evidence was such as to permit of only one reasonable conclusion—namely, that whatever the reaction of "normal" persons might be expected to be to the arthritic changes Mrs. Ber experienced, these changes were, for her, the harbingers of a degree of pain so severe and so continuous as to render her incapable of carrying on her occupation of sewing machine operator. The pains which Mrs. Ber experienced were wholly different from the minor aches, ailments and discomforts which the court in Adams v. Flemming, 276 F.2d 901 (2 Cir.1960), regarded as being insufficient to entitle a sufferer to disability benefits, and, unlike the claimant in that case, Mrs. Ber introduced into evidence medical reports supporting her allegations of an inability to work. Moreover, it is clear that Mrs. Ber's ailment met the statutory test of an impairment "which can be expected to result in death or to be of long-continued and indefinite duration," and the Government does not seriously dispute this. Two of the doctors who examined Mrs. Ber stated that her condition was becoming progressively worse, and one of them along with a third examining doctor, stated that improvement could be expected only in the indefinite future. One other doctor, Dr. Rubinowitz, offered a prognosis which was simply a one sentence "Guarded," and the psychologist who examined Mrs. Ber suggested that she might require psychiatric treatment, with no indication that this could be expected to relieve or ease her pain in the foreseeable future. In addition, the entire medical evidence established the truth of Mrs. Ber's claim that her twenty year old arthritis had worsened steadily and severely in the last two years she had worked, and this alone constituted very strong evidence of a disabling trend not likely to reverse itself. Thus, whatever the value to be placed on the Hearing Examiner's statement that "inasmuch as the claimant has never been treated psychiatrically it cannot be said that whatever psychoneurosis she may have is intractable to therapy," that statement cannot be taken as a finding of a failure to meet the statutory test of an illness of long-continued and indefinite duration which has substantial evidentiary support. A mere failure to supplement the above evidence of an illness of indefinite duration with a report by an examining psychiatrist that, whatever the effect of a neurosis on the claimant's condition, that neurosis is intractable to therapy, cannot bar the grant of disability benefits to this claimant. At the very least, "the applicant has raised a serious question and the evidence affords no sufficient basis for the Secretary's negative answer." Kerner v. Flemming, supra, 283 F.2d at 922.

Therefore, we hold that the Hearing Examiner was in error in concluding that Mrs. Ber was not prevented by a long term illness of indefinite duration from continuing to perform in her occupation as a sewing machine operator. In addition, we think it equally clear that no supportable finding can be made that Mrs. Ber, now almost sixty-three years old, in constant pain, unable to move about and possessed of an extremely limited employment history, is any more capable of finding and holding an alternative job amounting to substantial gainful employment than she is of returning to her old job. No contention was advanced before the Hearing Examiner that there was available to Mrs. Ber alternative work which she could perform if unable to return to the only occupation she had ever pursued; nor did the Hearing Examiner intimate that such an issue was substantial enough to merit mention, let alone extended examination and discussion. Compare Kerner v. Flemming, supra. Moreover, the Secretary on this appeal has not even suggested that there might be required additional administrative proceedings to resolve such an issue. Under the circumstances, we think it would serve no useful purpose to order Mrs. Ber's case, which has now dragged on for nearly four years, returned to the Secretary's Hearing Examiner so that he might make an independent determination on the issue of the availability of alternative substantial gainful employment. The record clearly demonstrates that his determination would, by all odds, be one in favor of Mrs. Ber, and, at any rate, we have already indicated that a contrary one would not be supportable upon judicial review as provided by statute.

We therefore reverse the district court's grant of summary judgment in favor of the appellee, the Secretary of Health, Education and Welfare, and we remand with instructions to enter summary judgment in favor of the appellant, Shirley A. Ber.