**Isidra CLAUSSELL, Plaintiff,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant.**

**No. 69 Civ. 4529.**

United States District Court,
S. D. New York.

Jan. 24, 1972.

Allan R. Zaroff, New York City, for plaintiff, by Mark Rosenfeld, of counsel.

Whitney North Seymour, Jr., New York City, U. S. Atty. for the S.D.N.Y. for the United States by Milton Sherman, New York City, of counsel.

GURFEIN, District Judge.

This action was instituted pursuant to the provisions of 42 U.S.C. § 405(g) (Section 205(g) of the Social Security Act, as amended (the "Act")) to review a final decision of the Secretary of Health, Education and Welfare (the "Secretary"), denying plaintiff's application for the establishment of a period of disability and for disability insurance benefits under the provisions of 42 U.S.C. §§ 416(i) and 423 (Sections 216(i) and 223 of the Act).

On April 17, 1968 the plaintiff filed her application with the Social Security Administration for the establishment of a period of disability and for disability insurance benefits, alleging that she became unable to work in August of 1967, at age 60. By letter dated August 9, 1968, the Social Security Administration advised plaintiff that her claim had been denied on the ground that she did not meet the disability requirement of the law. Following affirmance upon reconsideration, a hearing was held on June 25, 1969, at which plaintiff appeared and testified, represented by counsel. In a

written decision, the hearing examiner denied plaintiff's application, finding that she had failed to establish that, at any time from August 1967 to the date of his decision, she had had an impairment or combination of impairments which was of such severity as to prevent her from engaging in any substantial gainful activity and which had lasted a continuous period of at least twelve months or was expected to last such period or to end in death. On August 20, 1969 the Appeals Council declined to review the examiner's decision, which thus became the decision of the Secretary. Thereafter this action was commenced.

The defendant moves for summary judgment under Fed.R.Civ.P. 56. The plaintiff in her brief asks for summary judgment on her behalf.

The term "disability" in 42 U.S.C. 416 (i) (1) and 423(d) (1) (Sections 216 (i) (1) and 223(d) (1) of the Act), is defined in pertinent part as follows:

> "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months * * *." [1]

Plaintiff is a 64-year-old widow, born in Puerto Rico, where she received a seventh-grade education. Beginning in 1949 plaintiff was employed as a machine packer for the Brillo Manufacturing Co., and worked regularly until February 1966 when she injured her right shoulder as a result of a fall. Following this fall, she came under the care of Dr. Harvey H. Lewis, an orthopedic surgeon, who diagnosed her injury as a fracture of the neck of her right humerus. As a result of this injury, plaintiff was caused to be totally incapacitated for employment purposes until August 22, 1966. She received New York State disability benefits until July 5, 1966.

The plaintiff testified at the hearing on June 25, 1969 that upon her return to work on August 22, 1966 she was able to work for three hours, at which time the pain in her right shoulder made further work impossible. Although the plaintiff did return to work, she only worked a total of eight weeks during the period of August 22, 1966 to January 1, 1967. She thereafter worked an additional thirty-two weeks until August 7, 1967. During this period the plaintiff continued to be treated by Dr. Lewis.

In September, 1967 the plaintiff agreed to undergo an operation at Flower-Fifth Avenue Hospital where, on September 6, 1967, she underwent a resection of the outer end of the acromin and a tenodesis on the hypermobile biceps tendon of the right shoulder. Dr. Lewis reported, on November 27, 1967 that the plaintiff was completely disabled and in need of further medical attention. He also stated that her disability was causally related to her

---

1. Section 423(d) further provides (and these provisions are incorporated by references into section 416(i):
   "(2) For purposes of [the definition quoted in the text]—
   (A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to· do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country. * * *
   (3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. * * *
   (5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require."

fall in February 1966 in which she sustained a fracture of the right humerus.

The plaintiff testified at the hearing that Dr. Lewis told her that she was unable to work following her operation and in fact the plaintiff never returned to work after August 7, 1967. The plaintiff also testified that since August-September 1967 she had been unable to do her own housework or to dress herself. She testified that she experienced pain in her right shoulder while sitting and standing and that one of her neighbors sprays "ether" on her right shoulder to kill the pain. In addition, the plaintiff testified that she took pills four times daily to try to relieve the pain.

When questioned by the hearing examiner as to whether she had, during the 12 months prior to the hearing, travelled on the bus or subway, she replied that she took the bus to go to church, approximately 10 blocks from her home and that she had used the subway only 3 or 5 times during that period, primarily to go to her attorney's office and to attend the hearing. On these occasions she was accompanied by her daughter, Mrs. A. Martinez. Mrs. Martinez supported her mother's version that she required help for the household chores.

The medical testimony will be referred to in some detail below. There is no question that the requisite insurance premiums have been paid.

■ I am of the opinion that this case is so similar to Ber v. Celebrezze, 332 F. 2d 293 (2 Cir. 1964) that the decision in that case is controlling. Accord, Miracle v. Celebrezze, 351 F.2d 361 (6 Cir. 1965). Indeed, the primary test of disability has been liberalized by Congress since the decision in Ber. In 1964, the physical or mental impairment for "disability" was required to be one "which can be expected to result in death or to be of long-continued and indefinite duration." Social Security Act § 223 (c), 42 U.S.C. § 423(c) (2), quoted in 332

F.2d at 294. In 1965, Congress amended the definition of disability, substituting for the above quoted words, the following: "which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months" (42 U.S.C. § 416 (i) (1). Senate Report No. 404, U.S. Code Cong. & Admin. News, 89th Cong., 1st Sess., p. 2039 (1965) discloses the Congressional purpose:

> "The effect of the provision the committee is recommending is to provide disability benefits for a totally disabled worker even though his condition may be expected to improve after a year . . ."

> "Thus, where disability has existed for 12 calendar months or more, no prognosis would be required. Where a worker has been under a disability which has lasted for less than 12 calendar months, the bill would require only a prediction that the worker's disability will continue for a total of at least 12 calendar months after the onset of the disability."

The relevant period for determining disability became the twelve-month period of the statute, even though, thereafter, the claimant's condition might improve.[2]

In this case, as in Ber, the hearing examiner "pointed to no occupation other than that of a [packer] which [plaintiff] could have been expected to enter into and to engage in satisfactorily . . . [T]he Hearing Examiner's decision could only have been based upon a finding that [plaintiff's] condition was such that she was able to continue to be a [packer] despite her claims that her condition was so extremely painful that she was required to cease that work . . ." 332 F.2d at 295.

■ There was no specification by the hearing examiner as to what other employment opportunities were available to Mrs. Claussell. See Kerner v. Flemming, 283 F.2d 916 (2 Cir. 1960); Hayes v. Celebrezze, 311 F.2d 648, 654 (5 Cir.

2. Although the Act was again amended in 1967 to define disability further, no change was made in the liberalized twelve month provision.

1963). It must be assumed, therefore, that the hearing examiner held that Mrs. Claussell was able to continue her work as a packer and, indeed, his opinion makes that clear.

The test for determining that issue was whether from or in August 1967, when she claims the disability arose, the impairment must have lasted or should be expected to last 12 months, that is, to August 1968.

The medical evidence shows that her complaint is not feigned. She did suffer an accident which resulted in injuries to her right shoulder in February 1966. Although she worked full time from January 1, 1967 to August 7, 1967, she quit her job because of pain in the right shoulder. On September 6, 1967 she underwent the described operation at Flower-Fifth Avenue Hospital. On November 27, 1967, the attending physician, Dr. Lewis, reported that the plaintiff was completely disabled. He also noted that her disability was causally related to her fall in February 1966 in which she had sustained a fracture of the right humerus. The plaintiff never returned to work after August 7, 1967.

She was not examined by an outside orthopedic surgeon until June 27, 1968—almost eleven months later. This orthopedist, Dr. Frederick M. Marek, stated as part of "History" that she "apparently had a tenodesis of the long head of the biceps and an acriomioplasty. Mrs. Claussell has not materially improved since the operation and still has a great deal of almost constant pain, referred to the right shoulder, with considerable weakness and restriction of motion." Significantly, Dr. Marek reported that upon examination he found "some atrophy of the shoulder girdle and right upper arm; motions of the right shoulder are abduction to 150 (on the left 180), external rotation 60 (90), internal rotation 50 (90), abduction 20 (25). There is very diffuse tenderness about the right shoulder; all muscles seem to be active, but seem considerably weaker than one would expect from a right handed person comparing it to the left upper extremity." While the remaining orthopedic examination was negative, he found that "[g]rip of the right hand is impaired." He concluded that she "might have some difficulty in pushing and pulling with her right upper extremity, or in gripping an object." He noted that she had a 50% loss of use of the right upper extremity. He further stated that "I should expect her shoulder will improve within the next six months." At that time, the twelve month period had only one month and eleven days to run.

On October 4, 1968—after the 12 month period—Dr. Lewis reported: "No improvement. Still completely disabled. Is unresponsive to treatment. No hope for improvement."

It is interesting to note that Dr. Marek had reported that "Mrs. Claussell has restriction in her ability to lift, carry and I should estimate that she could probably lift 10 or 15 lbs. with either arm at reasonably close intervals, *but this is a pure guess*" (emphasis supplied). Despite the failure of Dr. Marek to put his guess to the test, the report on disability determination, when her disability claim was initially denied on July 22, 1968, categorically stated: "She *can* lift abut 10 to 15 lbs. with either arm at relatively close intervals" (emphasis supplied).

A further report was made denying disability on December 9, 1968 in which her job as "packager, machine" was described as follows: "This is medium work activity involving lifting a maximum of *50 lbs*. It also involved reaching, handling, fingering and feeling, and seeing" (emphasis supplied).

The conclusion of the Social Security report of July 12, 1968 (only twenty six days before the end of the twelve month period) was that the "claimant has a significant impairment to her right shoulder. She would have difficulty using her right arm in the performance of her former job. However, her left arm could be substituted and therefore the claimant has the capacity to engage in substantial gainful activity. The claim is denied."

There is no substantial evidence to support this finding. Dr. Lewis found, as late as June 18, 1969 that "[i]n using her left arm, it would increase the pain in her right shoulder." And the person best qualified to know, her employer, wrote subsequent to the above report: "In regards to Mrs. Claussell's type of work. She was a Dobie Packer while employed by us. Historically this job requires the use of both hands, and in the Company's opinion there is no other method that can be used."

The precise finding of the hearing examiner apparently accepted this conclusion; he nevertheless found:

"The record indicates that, although the claimant was disabled when she last worked in August 1967 and for some time following the surgery of September 6, 1967, she was not impaired, after August 1967, *for a period of at least 12 continuous months* to the extent that she was prevented from engaging in one of her former occupations. Nor does it appear that at any time since August 1967 it was expected that her impairment would continue, at such degree of severity, for at least such period or that it was expected that the condition, at such degree of severity, would end in death."

The medical opinion of Dr. Lewis, a diplomate in orthopedic surgery, although it is mentioned, seems to have been rejected almost out of hand. The examination by Dr. Marek tends to support a finding that her then disability—in relation to the need for using both arms in her job—was present only one month and eleven days before the twelve months elapsed. Dr. Melvin H. Jahss, an orthopedic surgeon, examined the plaintiff on November 7, 1968—about three months *after* the expiration of the twelve month statutory period.[3] He found that the surgery had been successful and that "[b]y purely objective point of view she has completely recovered from her right shoulder disability." This single examination by Dr. Jahss[4] is not strong enough to outweigh the approach laid down by the Second Circuit in the *Ber* case in dealing with pain. "[I]t is common knowledge that physical phenomena of a debilitative nature may work differing degrees of hardship on different persons . . . What one human being may be able to tolerate as an uncomfortable but bearable burden may constitute for another human being a degree of pain so unbearable as to subject him to unrelenting misery of the worst sort." 332 F.2d at 299. For a similar view, see Page v. Celebrezze, 311 F.2d 757 (5 Cir. 1963).

I do not believe that the 1967 amendments affect the result in this case.[5] A woman born in Puerto Rico, with little schooling, who has principally had one job which she is disabled to perform, could hardly have qualified for other work "which exists in the national economy;" and there is no evidence in the record that such employment would be more than a theoretical possibility. See King v. Cohen, 304 F.Supp. 148 (M.D. N.C.1969).

I conclude that, upon the record as a whole, the decision of the Secretary adverse to the claimant that she was not disabled for twelve months, is not supported by substantial evidence. The single examination by Dr. Jahss, three

3. The statutory threshold test to establish disability involves the twelve month period, even if the claimant recovers sufficiently to work *after* the expiration of the twelve month period. See Haverly v. Cohen, 310 F.Supp. 388 (E.D.Pa.1970).

4. It has been thought significant in reviewing the Secretary's finding to note that "[t]he two doctors who felt that plaintiff was not substantially disabled . . . saw him only once for an examination. He was examined without consulting the family physician." Bates v. Celebrezze, 234 F.Supp. 349, 354 (W.D. S.C.1964). And the testimony of a treating physician "is entitled to more consideration than the testimony of doctors who merely examine." Teague v. Gardner, 281 F.Supp. 43, 48 (E.D.Tenn.1968).

5. These are subparagraphs (2) and (3) quoted in footnote 1. See Wissmiller v. Finch, 307 F.Supp. 868 (W.D.Mich. 1969).

months after the expiration of the twelve month period, is not substantial evidence in the face of the whole record. Accordingly, the Secretary's motion for summary judgment is denied. Furthermore, it appears clear that the twelve month period to establish disability was satisfied from August of 1967 to August of 1968. Therefore, the Secretary's decision is reversed and the case remanded for a rehearing to establish the period of disability (which shall extend at least for the above specified twelve months), and the amount of money owing to plaintiff. 42 U.S.C. § 405(g); Hennessey v. Federal Security Administrator, 88 F. Supp. 664, 668 (D.Conn.1949). The motion for summary judgment is denied, and the matter is remanded for hearing in accordance with this opinion.

It is so ordered.