Carol STORYK, Plaintiff,

v.

**SECRETARY OF HEALTH, EDUCA-
TION, AND WELFARE, Defendant.**

No. 77 Civ. 4264 (CHT).

United States District Court,
S. D. New York.

Nov. 22, 1978.

Carol Storyk, pro se.

Robert B. Fiske, Jr., U. S. Atty., for the Southern District of New York, New York City, for defendant; Michael H. Dolinger, Asst. U. S. Atty., Borge Varmer, Regional Atty., Region II, Barbara L. Spivak, Asst. Regional Atty., Dept. of Health, Education, and Welfare, New York City, of counsel.

OPINION

TENNEY, District Judge.

Plaintiff Carol Storyk brought this action under Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (as amended) (the "Act"), for a review of a denial of a period of disability and disability insurance benefits. Storyk moved for summary judgment, and defendant Secretary of Health, Education, and Welfare (the "Secretary") cross-moved for a judgment on the pleadings. For the reasons given below, Storyk's motion for summary judgment is granted. Accordingly, the decision of the Secretary is reversed and remanded for calculation of a period of disability and award of benefits to Storyk.

On April 16, 1976, Storyk applied for the establishment of a period of disability under Section 216 of the Act, 42 U.S.C. § 416, and the payment of disability insurance benefits under Section 223 of the Act, 42 U.S.C. § 423. On April 19, 1976, she applied for Supplemental Security Income disability benefits under Title XVI of the Act.[1] The Secretary denied these applications both initially and on reconsideration. On March 31, 1977, at Storyk's request, the Secretary held an evidentiary hearing. The specific issues before the administrative law judge concerned Storyk's claim of "disability" within the meaning of the Act. Considering the case *de novo,* the administrative law judge decided that Storyk was not under a disability prior to the expiration of her insured status on March 31, 1970 and thus was not entitled to disability benefits under Title II of the Act. In a separate decision, he held Storyk entitled to Supplemental Income benefits under Title XVI. When approved by the Appeals Council on June 22, 1977, these decisions became the final decisions of the Secretary.

### Elements of Proof

█ In determining whether a person is disabled within the meaning of the Act, four elements of proof must be considered.

---

1. Further references to the Act will be to the United States Code sections.

They are (1) subjective evidence of pain and disability; (2) the claimant's age, education, and employment history; (3) diagnoses of examining physicians; and (4) objective medical facts or clinical findings. *DePaepe v. Richardson,* 464 F.2d 92, 94 (5th Cir. 1972); *Underwood v. Ribicoff,* 298 F.2d 850, 851 (4th Cir. 1962).

### Subjective Evidence of Disability

Subjective evidence of Storyk's pain and disability may be found in her complaints to examining physicians and in her testimony at the hearing. She complains primarily of headaches, but also of pains in her neck and back and of a limited range of motion. The pain she describes is constant, extremely severe, and often crippling. It is especially sharp when she takes a deep breath, sending a pain up to the top of her head. The pain frequently brings her to a state of exhaustion and collapse, two days in bed compensating for one relatively active day. She rarely sees friends and never goes out at night because the pain is so exhausting. She is able to sleep at night, but has trouble falling asleep, and she wakes up with the headache. She has lived with these pains for twenty years.

### Vocational and Related Evidence

Vocational and related evidence may also be gathered from the record. Storyk was forty-eight-years old at the time of the hearing. She is a graduate of Cooper Union School of Fine Arts. She is married, and she and her husband now live with his parents, subsisting largely on money his father gives them for food. Her husband is permanently unemployed.

Storyk's last regular job ended in 1964; until then she worked for five years as a "girl friday" for a society jeweler, a job requiring her to do little in addition to being there and opening the door when necessary. She spent three-quarters of the time lying on the floor because of the pain. She continued to suffer from headaches while she and her husband lived in Italy from 1964 to 1966, as she did during the eight years while they lived in England, where her husband studied in the British Museum. While in England, she used her art skills enough in free-lance work to earn money for food. In 1969 she returned to the United States without her husband because of a family emergency. While in New York, she worked for seven months in an art gallery, but was laid off in March 1970. She then received unemployment benefits until June 1970 when she returned to England to be with her husband. In 1975 she returned to the United States where, from May until October 1975, she worked for *Reader's Digest* as a free-lance picture researcher four days a week, six hours a day, during which period she earned $2,980.00. She testified that she was unable to meet even the demands of this part-time job, that she collapsed from unbearable pain and had to quit. She also found it necessary to refuse two offers of full-time employment because she would not be able to meet the demands of the jobs.

### Medical Evidence

The third and fourth elements of proof, diagnoses of examining physicians and objective medical facts or clinical findings, will be presented together. Storyk's medical history is extensive. Storyk testified that from about age fourteen to age twenty she attended special exercise classes at the Hospital for Special Surgery. In 1958 (or approximately then) she went to Montefiore Hospital to get relief from her headaches. Her more intensive treatment started, though, while she lived in England. There, Dr. A. E. Davies, physician to the Queen's children, began seeing Storyk—as a pet project, the latter testified. Dr. Davies reported that she had been treating the plaintiff since 1967 for spinal scoliosis. At one point she had Storyk hospitalized for observation; at that time dorso-lumbar scoliosis and cervical spandylosis were diagnosed. Dr. Guy Beauchamp, apparently one of the doctors to whom Dr. Davies referred her patient, reported in March 1969 that X-rays suggested a stress in the lower cervical discs. T. 114. Dr. Davies further reported that a specialist in psychosomatic disorders

considered the plaintiff's pain to be of organic origin with a mild secondary depression. In one letter to the patient, also in the record, Dr. Davies wrote that she believed that Storyk was suffering from the effects of chronic hypocarbia[2] because of persistent bad breathing, which makes her more sensitive to pain than other people. Finally, Dr. Davies reported that treatments, drugs and physiotherapy included, helped little. She concluded that Storyk's spinal problems are not likely to become fewer, that at no time had the patient been strong enough to sustain a job requiring more than twenty hours a week, and that she believed her patient to be permanently incapable of employment because of the severe pains she suffers from her skeletal problems. T. 115, 128–29, 131–32.

Further examinations of Storyk were made in the United States. Medical records from the Hospital for Special Surgery, dated between February and May of 1976, disclosed continuing complaints in the nature of those reported above. The screening clinic of that hospital found a spinal curvature malformation, but found no limit on the range of motion. Dr. Doherty of the hospital's neck and shoulder clinic found a relatively good range of motion, no tenderness or palpation of the spine and no muscle spasm or guarding. He reported that the X-rays revealed minimal osteoarthritic changes in the cervical spine, no disc narrowing, and no osteophyte formations. Dr. Moneim of the same clinic later reported that the recommended treatment of hot packs and cervical traction did not improve the patient's condition. He further reported that, as far as he could determine, she has no neurologic disturbance. He found her flexion and extension good. T. 116–17.

In June 1976, Dr. Stanley Dillenberg made a neurologic examination of Storyk. He reported the complaints of limited head rotation and constant, debilitating headaches. He found that Storyk's gait and station were normal, that the equilibratory and nonequilibratory tests were well performed, that she had no atrophies, "paraces" [sic] or fibrillations. He found her deep reflexes normal, her "sensory . . . normal to all modalities," her cranial nerves normal. He concluded that she had no disease of the central nervous system. Upon reviewing her cervical spine X-rays, he found no discogenic syndrome. He did note, as had the doctors above, a loss of the normal curvature of the spine; he determined that it might be a mechanical problem, but concluded that the central nervous system is not involved. T. 126–27.

Finally, the record contains a report by Dr. Simeon O. Chlenoff, a psychoanalyst. Dr. Chlenoff, after an extensive review of Storyk's history, diagnosed the plaintiff as having an anxiety neurosis and as being passive-dependent with mild depressive features. He concluded that the prognosis was guarded and recommended an attempt at brief psychotherapy aimed at helping her understand the meaning of her symptoms. He further recommended a judicious use of drugs. T. 133–35.

### Discussion

■ For one to qualify for disability payments under the Social Security Act, one must show a disability on or before the last date on which that person was insured under the Act. 42 U.S.C. §§ 416(i), 423(c); *Gold v. Secretary of Health, Education and Welfare,* 463 F.2d 38 (2d Cir. 1972). For Storyk, that date is March 31, 1970. T. 26. To receive benefits, she must be able to show that on or before that date she was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic tech-

---

2. "Hypocarbia" is a condition also called "hypocapnia," which is a "[d]eficiency of carbon dioxide in the blood." Dorland's *Illustrated Medical Dictionary* (23d ed. 1957).

niques." *Id.* § 423(d)(3). Further, a claimant may be considered disabled only if her impairments are so severe that she not only cannot do her previous work, but that, considering her age, education, and work experience, she cannot do any other substantial gainful work existing in the national economy. *Id.* § 423(d)(2). Storyk bears the burden of establishing that she meets these requirements. *Id.* § 423(d)(5); *Gold v. Secretary of Health, Education and Welfare, supra*, 463 F.2d at 41; *Kerner v. Flemming*, 283 F.2d 916, 921–22 (2d Cir. 1960). Although the standard for eligibility is to be construed broadly and applied liberally in light of the Act's remedial purpose, *Gold v. Secretary of Health, Education and Welfare, supra*, 463 F.2d at 41; *Haberman v. Finch*, 418 F.2d 664, 666–67 (2d Cir. 1969), the Court must affirm the Secretary's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Franklin v. Secretary of Health, Education and Welfare*, 393 F.2d 640, 642 (2d Cir. 1968). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

*Subjective Evidence of Disability*

In reviewing that portion of the evidence which records subjective testimony of the disability, the Court must consider all of Storyk's complaints in toto in determining her capacity to work. *Gold v. Secretary of Health, Education and Welfare, supra*, 463 F.2d at 42; *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir. 1971). Here the complaints include not only headaches and neck and back pains, but also limited movement and the exhaustion, anxiety, and collapses that result from the severe and constant pains. There is no challenge on the record to Storyk's subjective evidence of great and unrelenting pain. The only challenge is to the clinical or laboratory support for it, discussed *infra*. The administrative

law judge referred to her "significant problem" of headaches and found specifically that "[t]he claimant impairments [sic] consist of an anxiety problem coupled with constant pain and headaches." T. 26. The subjective evidence of Storyk's complaints, when considered together, urge a finding of disability within the meaning of the Act.

Moreover, her pain is of such severity that, by itself, it would support a finding of disability. *See Bittel v. Richardson, supra*, 441 F.2d at 1195; *Ber v. Celebrezze*, 332 F.2d 293, 300 (2d Cir. 1964). As in *Ber v. Celebrezze, supra*, Storyk's pain is "wholly different from the minor aches, ailments and discomforts" that are insufficient to entitle a claimant to benefits, *id.* at 300, and is clearly of such severity as to render her incapable of substantial gainful activity. In this regard, the Court notes that the severity of the pain *to this sufferer* controls, not whether another might have been able to endure it more easily. *Bittel v. Richardson, supra*, 441 F.2d at 1195; *Floyd v. Finch*, 441 F.2d 73, 106, 109–10 (6th Cir. 1971); *Ber v. Celebrezze, supra*, 332 F.2d at 299, 300. Here, Storyk's English physician, Dr. Davies, thought that Storyk was suffering from hypocarbia, which renders her particularly sensitive to pain. T. 131.

*Medical Evidence*

The medical evidence is not as unequivocal as the subjective evidence of disability, but it, too, points to a finding of disability. In general, this evidence supports the conclusions that Storyk has observable but limited orthopedic problems, problems not so much disabling in themselves but rather because of the pain they, in whole or part, generate; that she has anxiety problems, which appear to have a chicken-or-egg relationship with the pain; and that medicine, broadly speaking, appears unable to give her relief. The administrative law judge concluded that "the medical evidence indicates that the claimant has an anxiety problem coupled with some congenital orthopedic disabilities and that this constitutes a significant problem because of headaches." T. 26.

The Government argues, however, that Storyk has failed to provide clinical or

laboratory data supporting the conclusion that she suffered disabling pain. The Government would impose a greater burden than the Act. The Act requires clinical or laboratory support not for the severity of the pain, but merely for the "anatomical, physiological, or psychological abnormalities" that cause the "physical or mental impairment." 42 U.S.C. § 423(d)(3). The administrative law judge concluded that the medical evidence indicates that Storyk has an anxiety problem and orthopedic disabilities, T. 26, a conclusion adequately supported in the record (see medical evidence discussion, supra).[3] Even were the record less clear, the law is that objective medical evidence is unnecessary to a finding of disability. Ber v. Celebrezze, supra, 332 F.2d at 299; Bittel v. Richardson, supra, 441 F.2d at 1195; Rosa v. Weinberger, 381 F.Supp. 377, 380 (E.D.N.Y.1974). Here, as discussed above, Storyk's constant and severe pain supports a finding of disability.[4]

*Vocational and Related Evidence*

 In its argument in support of the Secretary's denial of benefits, the Govern-

ment also relies on an HEW regulation. Under this regulation, enacted pursuant to the Secretary's authority under 42 U.S.C. § 423(d)(4), an individual is presumed to be capable of substantial gainful activity if she earns in excess of a set amount, here $200.00 per month. 20 C.F.R. § 404.1534(b). From May to October 1975, at *Reader's Digest,* Storyk earned in excess of this minimum, thus raising the presumption that she is not disabled within the meaning of the Act. The administrative law judge concluded, to his apparent regret, that Storyk had not rebutted this presumption. T. 26.[5] The Government argues that this finding is dispositive of Storyk's claim "unless," in the words of 20 C.F.R. § 404.1534(b), "there is evidence that an individual's work activities establish that the individual does not have the ability to engage in substantial gainful activity under the criteria in §§ 404.1532 and 404.1533 and paragraph (a) of this section." Here, the circumstances of Storyk's work activities, taken together, clearly establish that she meets the exceptions covered in the "unless" clause.[6] She was unable to sustain even the number of hours re-

---

3. Dr. Davies's reports support a finding of disability more strongly than the reports made by the American physicians. The Government argues that her reports are "sketchy" and "conclusory" and may therefore be accorded less weight than reports more fully supported by objective data. Assuming *arguendo* that the Government were not arguing contrary to the findings of the administrative law judge and that the Government's characterization of Dr. Davies's reports were correct, this Court would not be inclined to give less weight to Dr. Davies's reports than the others. Dr. Davies, rather than observing the patient once or twice, treated her over a period of several years. Her determination is entitled to more, not less, weight than that of a doctor who has seen a claimant only once. *Floyd v. Finch, supra,* 441 F.2d at 107; *Jenkins v. Celebrezze,* 335 F.2d 6, 8 (4th Cir. 1964); *Rosa v. Weinberger,* 381 F.Supp. 377, 380 (E.D.N.Y.1974). This principle is particularly apt where the treating physician had the patient in her care during the relevant time period rather than several years afterwards, as is the case with the American physicians.

4. The Government argues that Storyk's impairment cannot be considered disabling because she failed to pursue a course of treatment recommended by the psychiatrist, Dr. Chlenoff.

Memorandum at 18–19. Storyk responded that not only did Dr. Chlenoff fail to reply to her letter asking for help, but also that she has been seeing a psychiatrist twice a week at Columbia Presbyterian Hospital since July 22, 1977. Motion in Opposition to a Cross-Motion at 2.

5. The administrative law judge prefaced statements about Storyk's last date of insured status and the affect her 1975 earnings had on her claim with the word "unfortunately." T. 26.

6. Whether the Secretary's exceptions are merely illustrative of circumstances that may rebut the presumption of ability to engage in substantial gainful activity or whether they are the only such circumstances is unclear. *Compare Hedge v. Richardson,* 458 F.2d 1065, 1067 (10th Cir. 1972) (suggesting, though not clearly deciding, that the "unless" clause should be read narrowly so as to include only exceptions set forth by the Secretary) *with Wilson v. Richardson,* 455 F.2d 304, 306–08 (4th Cir. 1972) (reading the "unless" clause as merely illustrative of exceptions to the presumption). Under the *Wilson* reading, the subjective evidence of the disability and the avocational evidence would clearly rebut the presumption, but here it is unnecessary to go outside the exceptions set forth by the Secretary.

quired by her part-time schedule at *Reader's Digest. See id.* § 404.1533. Because she could not tolerate the standing that public transportation requires, she had to resort to taxis. *See id.* § 404.1534(a). And, most important in rebutting the presumption that she was not disabled, she worked, at most, sporadically. *See id.* A sporadic work history can rebut the presumption of ability to engage in substantial gainful activity that arises under the regulation when the earning minimum is met. *Coulter v. Weinberger,* 527 F.2d 224, 229 (3d Cir. 1975); *Shutt v. Secretary of Health, Education and Welfare,* 490 F.2d 43, 47–48 (5th Cir. 1974); *Wilson v. Richardson,* 455 F.2d 304, 307 (4th Cir. 1972). The instant case provides even clearer vocational evidence than the cited authority that the claimant was disabled. Storyk's work history was not so much sporadic as it was nearly non-existent. Working only several months over a period of several years because of severe pain and refusing permanent jobs because of that pain, clearly rebut the presumption raised under the regulation. Further, work brought her to the point of collapse and weakened her powers of recuperation, making the continuation of even part-time work difficult, if not impossible. The regulations do not require, as is shown by the exceptions discussed above, a finding that a person merely able to tolerate life, mostly in a prone position, is capable of substantial gainful activity.

Accordingly, Storyk's motion for summary judgment is granted. A fortiori, the Government's Rule 12(c) motion is denied. The Secretary's decision is reversed, and the case is remanded for calculation of a period of disability and award of benefits to Storyk.

So ordered.