June M. MATTHEWS, Plaintiff,

v.

David MATTHEWS, Secretary of Health,
Education and Welfare, Defendant.

Civ. A. No. 75–0431–R.

United States District Court,
E. D. Virginia,
Richmond Division.

June 3, 1976.

C. Gilbert Hudson, Jr., Outten, Barrett,
Burr & Stanley, Emporia, Va., for plaintiff.

Robert W. Jaspen, Asst. U. S. Atty., Rich-
mond, Va., for defendant.

## MEMORANDUM

MERHIGE, District Judge.

June M. Matthews brings this action un-
der § 205(g) of the Social Security Act, 42
U.S.C. § 405(g) (1970), to review a final
decision of the Secretary in which it was
held that he was not entitled to disability
benefits. The sole issue before the Court is
whether the final decision of the Secretary
is based upon substantial evidence. *See* 42
U.S.C. § 405(g). The defendant has moved
for summary judgment and the plaintiff
has responded by cross motioning for sum-
mary judgment.

The Secretary, and not the Court, is
charged with the duty to weigh the evi-
dence, and to resolve material conflicts in
the testimony. *Richardson v. Perales,* 402
U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842
(1971); *Moss v. Gardner,* 411 F.2d 1195 (4th
Cir. 1969). The Court is, however, duty
bound to give careful scrutiny to the entire
record to assure that there is a sound foun-
dation for the Secretary's findings, and that
his decision is rational. *E. g., Wyatt v.
Weinberger,* 519 F.2d 1285 (4th Cir. 1975);
*Taylor v. Weinberger,* 512 F.2d 664 (4th Cir.
1975); *Vitek v. Finch,* 438 F.2d 1157 (4th
Cir. 1971).

The facts are not in dispute. They are,
as summarized by the defendant, as fol-
lows:

Plaintiff filed an application for a period
of disability and for disability insurance
benefits on July 31, 1973, alleging that he
became unable to work on April 14, 1973, at
age 39. The application was denied initially
and on reconsideration by the Bureau of
Disability Insurance of the Social Security
Administration, after the Virginia State
Agency, upon evaluation of the evidence by
a physician and a disability examiner, had
found that plaintiff was not under a disabil-
ity. The administrative law judge, before
whom plaintiff and his attorney appeared,
considered the case *de novo,* and on July 15,
1974, found that plaintiff was not under a
disability. The Appeals Council granted
plaintiff's request for review and arranged
for plaintiff to have medical examinations.
After receipt of additional evidence, the
Appeals Council issued a decision on August
11, 1975, holding that plaintiff was not un-
der a disability. The Appeals Council's de-

cision is the final decision of the Secretary of Health, Education and Welfare.[1]

On his application of July 31, 1973, plaintiff alleged he became unable to work on April 14, 1973, due to a stomach condition requiring surgical removal of a major part of the stomach. He had 10 years of schooling. While in military service, he took a course in truck repair work. From 1956 until 1960, he was self-employed in the gas station and auto repair business. He discontinued the business because a new highway by-passed his place of business. Thereafter, he worked about two years as a Coca Cola truck driver. From 1962 until April 1973 he was employed at Allied Chemical as an extrusion operator.

In February 1973, he entered the Johnston-Willis Hospital for five days because of epigastric pain off and on for a year, worse since December 1972. Physical examination showed only some abdominal tenderness. Upper G.I. series showed a lot of pylorospasm with a contracted duodenal bulb. He had been hospitalized elsewhere shortly before entering Johnston-Willis. He was thought to have an atypical ulcer syndrome. However, he improved markedly on treatment in February 1973.

On April 17, 1973, he was readmitted to Johnston-Willis for what seemed to be ulcer symptoms. At surgery on April 23, 1973, no definite ulcer was found, but a bilateral truncal vagotomy and antrectomy with gastrojejunostomy was performed. He left the hospital April 30, 1973, but returned May 2, 1973 because of nausea, vomitus and inability to retain liquids or solids. Upper G.I. X-rays on May 3, 1973 showed distention of the gastric stump and no passage of barium into the small intestine (blockage). However, repeat X-rays on May 11, 1973, after treatment, showed slow emptying with continued dilation of the stomach. He left the hospital May 16, 1973, but returned again on May 21, 1973. Because of continued inadequate emptying, he underwent further

surgery May 30, 1973. The anastamosis was patent (site of previous surgical connection but blocked) but adhesions were present. The adhesions were freed and a gastrostomy tube was inserted. He was discharged from the hospital on June 9, 1973, with the tube in place (exiting from the left side), to return in two weeks for removal of the tube if he were progressing satisfactorily.

On October 2, 1973, Benjamin B. Weisiger, M.D., a specialist in internal medicine and gastroenterology, reported plaintiff had many problems with anemia, nausea, vomitus and extreme weakness following surgery. He was gaining some weight and weighed 135 pounds. As of September 1973, hemoglobin was up to 12.8, hematocrit 38, and he was vomiting less. He had been unable to do any physical work more than a few minutes. Dr. Weisiger felt plaintiff might subsequently become able to do his previous work but this seemed several months away.

On January 7, 1974, Dr. Weisiger prepared a report for plaintiff's claim with the Veterans Administration. Plaintiff was unable to exert himself without extreme weakness, and he experienced nausea and vomitus if he ate more than very small quantities of food. He had gained weight from 130 to 136 pounds, but his weight was down to 131 in December 1973. Plaintiff's anemia was in the range of 9.7 and 34% in July following surgery but had since improved. Bland foods, dry and low in sugar, seemed to help alleviate dumping, although plaintiff remained weak. Hemoglobin had risen to 12 gm., with 41% hematocrit in November 1973. When seen in December 1973 plaintiff had abdominal soreness, but was taking no medication but Maalox. Dr. Weisiger stated plaintiff was unable to follow any gainful employment, that it was difficult to tell when he would be able to return to work, as his complaints were primarily subjective, but that he felt plaintiff

1. In October 1974, during pendency of Appeals Council's action on plaintiff's request for a review of the administrative law judge's decision, plaintiff filed another application. The Appeals Council subsequently granted plaintiff's request for a review and considered both applications.

could improve over a period of many months. The VA allowed the claim in January 1974 and awarded benefits from that month.

On February 11, 1974, Dr. Weisiger supplied plaintiff with a similar medical certificate for a pension with his employer. Dr. Weisiger stated plaintiff had been totally disabled, could not engage in substantial full-time activity, but that hopefully the disability would improve sufficiently to enable him to work.

On April 9, 1974, the administrative law judge scheduled a hearing for May 3, 1974, stating a vocational expert would be present and that pertinent evidence in the case had been sent to that expert for study. The next day, April 10, 1974, the administrative law judge sent a questionnaire to Dr. Weisiger. The reply (not apparently signed) showed May 2, 1974 for date of last examination, abdominal tenderness, weight 135 pounds, and last hematocrit normal in January 1974. For prognosis for return to work activity, the comment was "Eventually good, but don't know how long". The report was not received by the administrative law judge, however, until after plaintiff's hearing.

At the hearing on May 3, 1974, plaintiff testified he lived at home with his wife and two children. He stated his wife was employed and that he was receiving $164 monthly nonservice-connected VA pension. Plaintiff testified that he had received sick pay from his previous employer for six months after he stopped working, but those payments had been stopped. Plaintiff testified that during the two weeks prior to the hearing he had vomited once a day, although when he was careful he vomited only once a week. Plaintiff also stated he has diarrhea once or twice in an average week. Plaintiff testified his activities during the day, while his wife was at work, consisted of walking around. He stated he drives to town from his place (actual location and size of place where he lives and town he drove to, not shown).

Dr. Andrew V. Beale, a vocational expert, testified. On the basis of assumptions that plaintiff's impairments and surgeries were so severe as to prevent sustained work activity, the vocational expert testified plaintiff could not do his previous jobs, or any other jobs. On the basis of a further assumption that plaintiff could do light or sedentary work, the expert stated plaintiff could not do his previous work as it required prolonged standing. On the basis of further assumptions that plaintiff could do light and sedentary work not requiring prolonged standing or bending, the expert testified there were thousands of jobs plaintiff could do in the general category of bench assembly, bench packaging and bench processing. He cited examples of jobs as envelope catcher at Union Envelope, capsule inspector and packager tending machinery at a drug manufacturing plant, and assembler of components of TV sets at a G.E. plant in Nansemond County where over 1,700 individuals do this type of work. He also cited examples of assembly, packaging and machine tending jobs which existed in various plants and cities in Virginia.

Plaintiff's response to this testimony was he could not do those jobs because he could not sit very long, that he had stomach cramps and had to go to the bathroom and could not do anything very long at a time. His wife testified to the effect that he made frequent trips to the bathroom.

At the hearing, plaintiff offered a certificate dated May 2, 1974 from Dr. Weisiger, stating plaintiff still appeared to be disabled, with nausea, vomiting and diarrhea after exertion. Plaintiff's weight was 135 pounds. After the hearing, the administrative law judge received the reply to the questionnaire he previously sent to Dr. Weisiger. On May 21, 1974, the administrative law judge sent plaintiff a copy of the questionnaire and reply, for comment. On July 9, 1974, plaintiff wrote a letter to the administrative law judge, pointing out that if an individual is disabled for as long as a year, he may be entitled to disability benefits even if he may be able to go back to work in the future.

On July 15, 1974, the administrative law judge issued a denial decision partly on

grounds that the clinical and laboratory findings "do not reveal any significant pathological or structural changes in the gastrointestinal tract," and did not demonstrate a level of severity as set forth in Section 5 of the Listing of Impairments. He also found plaintiff had sufficiently recovered from surgeries within a 12-month period so as to be able to engage in substantial gainful activity, and was able to do the light and sedentary jobs mentioned by the vocational expert.

Plaintiff requested Appeals Council review in July 1974. He furnished another report, dated August 22, 1974, from Dr. Weisiger stating plaintiff weighed 133 pounds, was fairly well developed and nourished in appearance and he diagnosed postgastrectomy syndrome. Dr. Weisiger reported plaintiff was not employable, although supporting clinical data were not included.

On December 2, 1974, the Appeals Council granted plaintiff's request for review and arranged for plaintiff to have a comprehensive verifying examination on December 31, 1974, by Richard Baylor, M.D., a specialist in internal medicine. L. J. Stetson, M.D., did some X-rays at Dr. Baylor's request. Plaintiff was eating multiple, small feedings daily. He had recurrent vomitus at times, and four loose stools daily. He did a slight amount of yard work but was unable to ride his power lawn mower or use his outboard motor boat. Plaintiff was 5′ 6″ tall and weighed 128 pounds. Except for some abdominal tenderness, physical examination was essentially normal. General muscle development was normal with no atrophy. Upper G.I. series showed the previous subtotal gastrectomy but was otherwise normal. Blood sugar was 149 mg percent 2 hours postprandial. Hemoglobin was 13.4 gms and hematocrit was 41.4 (results of blood tests indicating no anemia). Dr. Baylor felt plaintiff was suffering from a dumping syndrome and possibly mild diabetes. Much of his symptomatology appeared to be related to a rather severe anxiety depression reaction. Bilateral cheilosis (fissuring and scaling of lips due to riboflavin deficiency) suggested possible malnutrition.

The October 1974 application, added to the record by the Appeals Council, was essentially duplicate, except that in October 1974 plaintiff revealed he was receiving a benefit from another federal agency, the VA, and visiting the McGuire Hospital monthly, through the VA. Observations by social security personnel in October 1974 showed no outward signs of any problem hearing, speaking, comprehending, using his arms and hands, sitting or walking.

On May 16, 1975, the Appeals Council advised plaintiff his case would be carefully evaluated as soon as possible. On May 28, 1975, the Appeals Council sent plaintiff a copy of Dr. Baylor's report for comment preliminary to introducing the report into the record, and extended opportunity for him to furnish additional evidence.

On May 26, 1975, in response to a May 23, 1975 letter from the local social security office in Petersburg, Virginia, plaintiff stated he lost weight to 110 pounds, was unable to do anything, and that it seemed he would be dead before action was taken. On May 31, 1975, plaintiff wrote a letter, apparently to the Appeals Council, stating he weighed 123 pounds and was unable to work. On July 21, 1975, he stated that he weighed 121 pounds and was unable to eat anything or do anything.

On August 11, 1975, the Appeals Council issued its decision stating the Council had granted plaintiff's request for review in order to obtain a comprehensive current examination, done by Dr. Baylor. The Appeals Council relied on Dr. Baylor's findings in support of the conclusion that plaintiff did not have any severe loss of physical function which would preclude him from performing occupations cited by the vocational expert at the May 1974 hearing. The Appeals Council found no entitlement on the July 1973 application, or on the supplemental application of October 25, 1974.

To qualify for a period of disability and disability insurance benefits under Sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must

meet the insured status requirements of these sections, be under age 65, file an application for disability insurance benefits and a period of disability, and be under a "disability" as defined in the Act.[2] Plaintiff met the insured status requirements of the Act at all times material to these proceedings. Consequently, he must show disability began on or before August 11, 1975, the date the Secretary's decision became final.

The term "disability" is defined in section 223 to mean:

"(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *which has lasted* or can be expected to last for a continuous period of not less than 12 months; * * *

* * * * * *

"(2) For purposes of paragraph (1)(A)—
"(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * * * * *

"(3) For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques.

* * * * * *

"(5) An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." (Emphasis added).

The plaintiff alleges that he became unable to work on April 14, 1973 due to a digestive impairment. The evidence supplied by Dr. Weisiger, the only doctor who was contacted in reference to the case until December 31, 1974, was in total support of the proposition that the plaintiff was disabled at the very minimum from the period of April of 1973 to May of 1974. The evidence in the record does not support the hearing examiner's finding that the plaintiff recovered from the results of his surgery within a 12-month period. Since the pertinent statutes provide that disability can be established if a significant impairment exists for a period of twelve months, and this has been established by the evidence in the record, the Court must reverse the Secretary's ruling. The plaintiff is entitled to disability payments. Dr. Baylor's testimony of December 31, 1974 is relevant, however, to whether the plaintiff's period of disability, see 42 U.S.C. § 416(i)(2) (1970), has ceased. *See generally, Claussell v. Secretary of Health, Education and Welfare,* 337 F.Supp. 717, 722 (S.D.N.Y.1972).

Accordingly, the case will be remanded to the Secretary for action not inconsistent with the express findings herein.

An appropriate order will issue.

---

**2.** Under §§ 223(a)(1)(D) and (C), disability insurance benefits are payable to an eligible individual for each month beginning with the first month after his waiting period ends and for every month thereafter during which he meets the requirements of the Act.