**Robert J. JENNY, Plaintiff,**

v.

**Joseph CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

Civ. No. 77–0–318.

United States District Court, D. Nebraska.

Sept. 27, 1978.

Dennis T. Chapman, Omaha, Neb., for plaintiff.

Paul W. Madgett, Asst. U. S. Atty., D. Neb., Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the defendant's motion for summary judgment [Filing # 6]. The action arose under 42 U.S.C. § 405(g) which provides for judicial review of any final decision by the Secretary of Health, Education and Welfare.

The plaintiff was originally granted disability insurance benefits (42 U.S.C.A. § 401 et seq.), and supplemental security income benefits (42 U.S.C.A. § 1381 et seq.), in 1974. Subsequently, on June 2, 1976, the Social Security Administration notified plaintiff that, based on medical evidence, it was determined that his period of disability ceased in March, 1976. Accordingly, his last disability payment was in May, 1976. After a hearing on February 24, 1977, an administrative law judge affirmed this decision. That decision was in turn approved by the Appeals Council on July 15, 1977, and the administrative law judge's decision became the final decision of the Secretary.

The sole issue before this Court is whether substantial evidence supports the decision of the Secretary. *Timmerman v. Weinberger,* 510 F.2d 439, 441 (8th Cir. 1975). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Celebrezze v. Bolas,* 316 F.2d 498, 501 (8th Cir. 1963).

A claimant is eligible for Social Security benefits if he is under a "disability." 42 U.S.C.A. § 423(a)(1)(D).

Disability is defined by 42 U.S.C. § 423(d)(1)(A) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . to last for a continuous period of not less than 12 months." An individual is disabled only if his impairments prevent his performing not only his previous work, but considering his age, education and experience, preclude "any other kind of substantial gainful work which exists in the national economy . . . ."

42 U.S.C. § 423(d)(2)(A).

*Poore v. Matthews,* 419 F.Supp. 142, 144–45 (D.Neb.1976).

While the claimant has the initial burden of establishing the existence of a disability, *Thompson v. Mathews,* 561 F.2d 1294 (8th Cir. 1977), this burden shifts to the Secretary when the claimant demonstrates that he is unable to return to his former work. *Klug v. Weinberger,* 514 F.2d 423, 426 (8th Cir. 1975). The Secretary must then show that there is some other kind of substantial gainful employment which the claimant could perform. *Glasgow v. Weinberger,* 405 F.Supp. 406, 408 (E.D.Cal.1975). Upon an examination of the record, the Court is convinced that the decision of the administrative law judge was supported by substantial evidence.

Plaintiff, who is currently 49 years old, has a tenth grade education, and is a heavy equipment operator by trade (Tr. 27, 28). His claim for disability is predicated solely on the loss of the use of his right hand as the result of an injury suffered in August, 1973 (Tr. 36). Surgery was performed in September, 1973 (Tr. 102), January, 1974 (Tr. 115–17), and February, 1974 (Tr. 113–14). Many cases have established that the loss of the use of an arm or hand, standing alone, is insufficient to establish a disability. *Knott v. Califano,* 559 F.2d 279, 280–82 (5th Cir. 1977); *Torske v. Richardson,* 484 F.2d 59, 60 (9th Cir. 1973), *cert. denied,* 417

U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974); *Wright v. Gardner,* 403 F.2d 646, 646–47 (7th Cir. 1968); *Wright v. Weinberger,* 391 F.Supp. 390, 393 (D.Md.1975); *Johnson v. Gardner,* 284 F.Supp. 230, 238–40 (C.D.Cal.1968).

Plaintiff's work experience indicated that he had worked in the construction trade since 1950 (Tr. 32). The only book work he had ever done was when he was a foreman (Tr. 29, 33). In 1975, after his last operation, the plaintiff worked for about seven to eight months as a pump operator (Tr. 28). At that time he was working eight hours a day, seven days a week, at a pay rate of $7.13 per hour. His sole responsibility was to watch the pumps and report any malfunction (Tr. 154–56). His successful completion of an eight month trial period at this job was one of the reasons for the original cessation of his disability benefits (Tr. 146).

The plaintiff claims that the condition of his hand has not changed since surgery was performed to correct the impairment. He cannot make a fist or bend his wrist. He did state that he could lift twenty pounds in weight using his thumb, index and middle fingers (Tr. 34). Plaintiff, who is right-handed, has learned to write somewhat with his right hand since the injury. He can lift his right arm above shoulder height and has no problems with the left hand (Tr. 33–36). He also can stand, walk, sit, kneel and squat without any problems (Tr. 36).

The administrative law judge considered the reports of three doctors. Dr. Max W. Kinney, the plaintiff's surgeon, reported that the plaintiff would eventually be able to engage in light work (Tr. 121). Plaintiff has not seen Dr. Kinney since March, 1974. In February, 1974, Dr. Donaciano E. Baca, plaintiff's personal physician, reported that plaintiff would have functional use of his hand in a year, and would eventually return to his former work (Tr. 120).

On July 8, 1975, Dr. Baca reported that plaintiff's sole physical limitation was the inability to use his right hand (Tr. 167). Dr. Baca further indicated on July 17, 1975, that the plaintiff needed surgery in the "distant future", but he was suitable for reorientation if he could not return to his former work (Tr. 168).

Subsequently, Dr. Baca, via a telephone conversation with the Disability Determination Unit on February 4, 1976, indicated that the plaintiff was unable to use his right hand in any capacity that required either fine or gross dexterity. Yet, he did indicate that plaintiff was able to do numerous jobs which did not require the use of his right hand (Tr. 172). In March, 1976, Dr. Baca reported again regarding plaintiff's injury to his right hand and indicated he was unable to predict a future date when surgery would be needed. He believed that the prognosis was not good and was not optimistic about the results of the prospective operation (Tr. 174). Moreover, Dr. Baca, in his Physical Capacities Evaluation form, reported that the plaintiff could stand or walk six to eight hours in an eight hour day, sit for the same amount of time, and frequently lift twenty pounds. While he further indicated that the plaintiff could not coordinate ability to perform fine manipulation, simple grasping, pushing, pulling and reaching above shoulder levels, he could bend, climb, carry and work near moving machinery and at heights without restriction. The doctor also found that the plaintiff could flex forward more than fifty degrees (Tr. 173).

However, an undated report submitted by Dr. Baca conflicted with his earlier reports of February, 1976. In the report, Dr. Baca now indicated that the plaintiff was a virtual cripple, unable to handle his usual occupation or any occupations that entailed a change in temperature, as his hand was sensitive to heat and cold. The doctor also reported that Jenny was nervous and depressed, and he had administered medication to handle this situation (Tr. 191). Yet, the administrative law judge noted, as the record indicated, that Jenny admitted he had not taken the medication for six to eight months prior to the hearing (Tr. 10, 30), and it was for the judge to resolve any conflicts between the reports. "It is for the Secretary as the trier of fact to resolve

conflicts in the evidence, and this Court will not reweigh the evidence." *Poore v. Matthews, supra,* 419 F.Supp. at 145.

On March 24, 1976, the plaintiff was examined by Dr. Frank J. Iwersen, an orthopedic surgeon. Dr. Iwersen found that plaintiff lacked flexion of the hand and wrist. He opined that plaintiff had a very severe disability and at that time had at least a 75% permanent impairment of the right hand and wrist (Tr. 175–76).

■ Significantly, none of these doctors ever concluded that the plaintiff was unable to work. Rather, as the Court has already mentioned, they stated that the plaintiff was capable of performing light work. In *Pasco v. Matthews* [1977–1978 Transfer Binder], Unemp. Ins.Rep. (CCH) ¶ 15,158 (D.Neb.1977), Judge Schatz of this Court adopted the findings of the magistrate which stated that the fact that no doctor concluded that the claimant was unable to work was significant in denying disability benefits. Moreover, while the plaintiff claims he is nervous and it was reported that he is depressed, absent a functional impairment of such severity to preclude substantial gainful activity, a mere presence of a mental disturbance is not disabling per se. *Alvarado v. Weinberger,* 511 F.2d 1046, 1049 (1st Cir. 1975); *Russell v. Secretary of HEW,* 402 F.Supp. 613, 619–20 (E.D.Mo.1975).

Finally, DeLoss D. Friesen, Ph.D., a counselor in vocational rehabilitation (Tr. 180–181) testified at the hearing. Dr. Friesen believed that the plaintiff was not capable of performing his former work. Based on the above evidence, observation of plaintiff at the hearing, and written medical reports, Dr. Friesen testified as to the kinds of work plaintiff could perform and the existence of such work in the Omaha, Nebraska area. The doctor was asked to assume the plaintiff's age, education, work experience, the fact that he had a laceration of the right hand which required surgery in September, 1973, and January, 1974, and that, although plaintiff's right hand could not be used for fine or gross dexterity, he could perform jobs not requiring the use of his right hand.

He further was asked to assume that additional surgery was possible, and that plaintiff's wrist lacked flexion resulting in a 75% impairment of plaintiff's right hand and wrist (Tr. 53–56).

Based on these assumptions, Dr. Friesen testified that plaintiff could perform light work such as dishwasher, janitor, mail clerk, quality control inspector (which was similar to plaintiff's job as a pump operator), "freezer man", watchman and guard. On the basis of a survey of this area, Dr. Friesen concluded that these jobs to which plaintiff was transferable existed in significant numbers in the plaintiff's locale (Tr. 56–59). Moreover, while Dr. Friesen would have reduced the number of jobs which plaintiff could perform assuming his sensitivity to temperature, nevertheless the doctor was of the opinion that a significant number remained which the plaintiff was capable of performing (Tr. 62–63, 66).

■ The plaintiff's main complaint was directed to the above testimony of Dr. Friesen. However, as the Court has already noted, it will not reweigh the evidence. The Secretary, as trier of fact, resolves any conflicts in the evidence. *See Timmerman v. Weinberger, supra,* 510 F.2d at 444. Even though the vocational witness did not examine the plaintiff and based his conclusions on the record and the testimony adduced at the hearing, the Secretary is entitled to consider his testimony. *See Kyle v. Cohen,* 449 F.2d 489 (4th Cir. 1971); *Davis v. Califano,* 439 F.Supp. 94 (E.D.Pa. 1977). "The opinions of such vocational experts are often accepted as substantial evidence to support a finding of nondisability." *Poore v. Matthews, supra,* 419 F.Supp. at 145.

■ It is well established that the Secretary is not required to find a specific employer and job opening available for the claimant. *Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir. 1974); *Daiss v. Secretary of HEW,* 373 F.Supp. 722, 727 (D.Neb.1974). The relevant inquiry is "whether jobs exist for which a person with plaintiff's condition and background can realistically compete,

not whether specific job vacancies exist for which he might be hired." *Poore v. Matthews, supra,* 419 F.Supp. at 145.

 On the basis of the evidence presented in the record, it is apparent that the Secretary's final decision was based on substantial evidence and the decision should be affirmed.

An order has been filed contemporaneously herewith in accordance with this Memorandum Opinion.