**Ramona VEGA, Plaintiff,**

v.

**Joseph A. CALIFANO, Jr., Secretary of Health, Education and Welfare, Defendant.**

**No. 78 Civ. 5836(LPG).**

United States District Court, S. D. New York.

April 21, 1980.

Alan H. Kleinman, New York City, Lloyd B. Silverman, Bronx Legal Services Corp., New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., New York City, for defendant; Stuart M. Bernstein, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiff seeks judicial review, pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), of a final decision of the Secretary of Health, Education and Welfare ("Secretary") denying her application for Disability Insurance and Supplemental

Security Income benefits. Both parties have moved for judgment on the pleadings, pursuant to Rule 12(c), Fed.R.Civ.P. For the reasons set forth below, the court grants defendant's motion.

### Background

Plaintiff was born in Puerto Rico in 1932 and completed four years of schooling there. During the approximately thirty years that she has lived in the United States, she has been employed for ten years; as a packager in a paper factory for three years and, most recently, as a hotel chambermaid for seven years. She stopped working in 1974, and three years later, in May 1977, she filed an application to establish a period of disability [1], Disability Insurance Benefits and Supplemental Security Income [2], pursuant to 42 U.S.C. §§ 416(c), 423 and 1382c, alleging that she was unable to continue working due to an asthmatic condition. The Secretary rejected her claims, and the decision was approved on reconsideration. Plaintiff thereafter requested and was granted a hearing before an Administrative Law Judge ("A.L.J."), who upheld the Secretary's decision. After the Appeals Council affirmed, the decision of the A.L.J. became the final decision of the administrative agency. The question now before this court is whether the Secretary's determination that plaintiff is not disabled within the meaning of the Social Security Act is supported by "substantial evidence." *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Following is a summary of the medical evidence submitted to the Secretary.

Dr. Kirk Dizon, whom plaintiff identified on her application as one of her treating physicians, submitted a report in response to the Secretary's request. He stated that he had been treating the plaintiff since 1974 for complaints of "angina pectoris, hyper-tension, bronchial asthma and chronic dyspepsia." The report concluded "as far as I am concerned, these clinical findings do not indicate the need for any drastic limitation on this patient's physical activity, but since her complaints are more or less subjective in nature, she has to be given the benefit of the doubt."

Dr. Sergio Pena, also named by plaintiff as her treating physician, submitted two letters. The first, dated July 26, 1977, accompanied plaintiff's application to the Secretary for reconsideration and read as follows:

> To whom it may concern:
>
> This is to state that I am Treating Mrs. Ramona Vega since October 18, 1974.
>
> She is suffering from Chronic Bronchial Astma [sic] and arthritis.
>
> Also she hs [sic] to take care of her husband who is follow up from cancer of lung and kidney.
>
> Mrs. Vega is not able to work in a gainful job for her living.

In the second report dated November 1977, Dr. Pena stated that her chronic asthmatic condition was worsening; that she originally had attacks once every two to three months and that the attacks recently occurred once a month and were "quite severe." He also stated that she had no cardiac problem to his knowledge, and that although she had degenerative arthritis affecting her lower spine, knees and hips, causing swelling and stiffness, the range of motion was not severely restricted.

A consultative examination was performed by Dr. Edmond Balinberg on June 13, 1977. At that time, according to the report of the same date, plaintiff complained of asthma, chest pain, usually at night, hay fever, lower abdominal pain, gas, and pain in her left knee. Plaintiff stated that she had five to six asthma attacks per week, each lasting an hour. Physical exam-

---

1. "The term 'period of disability' is statutorily defined as a continuous period . . . during which an individual was under a disability," 42 U.S.C. § 416(i)(2)(A), which begins "on the day the disability began." 42 U.S.C. § 416(i)(2)(C)(i).

2. The Supplemental Security Income program, enacted by amendment to the Social Security Act in 1972, is a program designed to provide benefits to aged, blind and disabled individuals who have income and resources below certain statutory amounts. 42 U.S.C. § 1382.

ination of extremities and neurological examination were normal, as was extension in both knees, with slight variation in flexion between right and left knees. EKG showed no significant changes after an incomplete exercise test. Pulmonary function studies were reported within normal limits. The physician's impressions were that plaintiff had bronchial asthma, respiratory insufficiency by history, hay fever, plantar calluses, arthritis by history in left knee and left foot, chest pain etiology unclear and hypertension by history.

A report from Dr. M. Reriberg, dated October 19, 1977, stated that plaintiff had been under treatment for osteoarthritis, anemia, bronchial asthma and gastritis, and added that plaintiff was responsible for the care of her husband who had cancer. Dr. Reriberg issued a second report dated April 6, 1978, submitted to the A.L.J. at the hearing on May 4, 1978, stating that he had been treating the plaintiff for back pain, chronic bronchial asthma and hypertension since 1977. He added that patient was developing "calluses on foot which unable her to walk at present [sic]." His diagnosis at the time of the report was that plaintiff suffered from hypertension, osteoarthritis, asthma and anemia, for which he prescribed medication. No follow up visit was ordered.

In addition to these physicians' reports, Lincoln Hospital submitted records indicating that at various times between 1969 and 1975 plaintiff was treated for gynecological disorders and gastroenteritis. At the hearing, the plaintiff agreed that all the preceding reports would be admitted into the record and become part of the evidence before the A.L.J.

Plaintiff appeared at the hearing accompanied by her daughter-in-law. In her preliminary remarks, the A.L.J. advised plaintiff that an interpreter and vocational expert were present, and reminded plaintiff that she was entitled to be represented by counsel. The A.L.J. stated that she would base her ultimate decision on the evidence submitted, consisting of the medical report and records, the testimony at the hearing, and any additional evidence introduced at the hearing. In response to the A.L.J.'s question, plaintiff stated that she stopped working because dust aggravated her asthma, and also because her husband's illness affected her nerves. Plaintiff stated that although she had arrived at the hearing by train, she was suffering from pain in her foot and back and was short of breath. She described other complaints, such as indigestion and sight difficulties, but stated that the conditions most disturbing to her were her legs and stomach. Plaintiff testified that during the winter she had asthma attacks twice a week, each lasting a few minutes, and that she had medication which controlled the attacks. She also testified that she had been scheduled for foot surgery which she cancelled because of her husband's illness.

Before posing two hypotheticals to the vocational expert, the A.L.J. questioned plaintiff about her ability to understand English. Plaintiff answered that she had been able to follow commands in her hotel job. In the first hypothetical, the A.L.J. described plaintiff's background, education and previous employment and asked the expert to assume the severity of pain and the limitations of movement which plaintiff described. The expert responded that plaintiff would not be able to perform any work assuming those conditions. In the next hypothetical, the A.L.J. asked the expert to assume that the subject could climb a flight of stairs to the train daily, carry light objects only for short distances, sit and stand alternatively, and walk a few blocks. The expert responded that the plaintiff would be capable of working in various specific sedentary occupations [3], and that the plaintiff's limited facility with English would not be a handicap.

3. Such occupations included a button sorter in the knitting goods industry, a tester in the electric appliance industry and a counter in the clock and watch industry. The vocational expert described all these jobs as routine, requiring little communication beyond initial demonstration and "industrially clean", involving a minimal dust factor.

The A.L.J. held that plaintiff was not disabled within the meaning of the relevant statutory sections, based upon her evaluation of the medical evidence, testimony at the hearing and her observation of plaintiff's movement and demeanor. The A.L.J. explicitly recognized that pain was a subjective matter, but did not accept plaintiff's allegations of her physical limitations.

Plaintiff requested review by the Appeals Council which upheld the A.L.J.'s decision. In its letter to plaintiff, the Appeals Council acknowledged receipt of an additional medical report, dated May 1978, which stated that plaintiff was being evaluated for possible arthritis of the cervical spine and was "under care for bronchial asthma which she suffers all year long." However, the Appeals Council stated that the letter was duplicative of other reports and did not affect its decision. Finally, the Appeals Council received a letter from a psychiatrist, Dr. Kildare Clarke, subsequent to the Council's decision and notification to plaintiff.[4] In a second letter, the Council advised plaintiff that it had considered the psychiatrist's report and determined that the evaluation did not alter the conclusion of the A.L.J., in which the Appeals Council joined, that plaintiff was not disabled within the meaning of the law.

*Discussion*

In order to be eligible for disability insurance benefits, a claimant must demonstrate that he is disabled within the meaning of Section 223(d)(1), 42 U.S.C. § 423(d)(1), of the Act, which states:

(d)(1) The term 'disability' means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

The section further provides that an individual is disabled "only if his physical or mental . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Section 223(d)(2)(A), 42 U.S.C. § 423(d)(2)(A).[5] In denying plaintiff's claim for benefits, the Secretary concluded that plaintiff was not disabled within the meaning of the statute.

In reviewing the Secretary's decision, this court must uphold factual findings of the Secretary provided they are supported by substantial evidence. 42 U.S.C. § 405(g), *Marcus v. Califano*, 615 F.2d 23 (2d Cir. 1979); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978), see *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Substantial evidence is defined as "such relevant evidence as a reasonable man might accept as adequate to support a conclusion." *Richardson v. Perales, supra*, 402 U.S. at 401, 91 S.Ct. at 1427; *Bastien v. Califano, supra*,

4. The letter dated July 14, 1978, addressed to the Appeals Council, read in relevant part as follows:

On psychiatric evaluation of Ms. Ramona Vega, it is my professional opinion that she is in need of further assistance, based on both psychiatric reasons and medical reasons of her own and also on medical reasons of her husband.

Ms. Romana Vega was working up until three years ago when her husband became ill with C., A. of [sic] the lungs and had to go for *thorocotomy, which resulted in the re*moval of one lung. He again had to undergo a second operation for a Nephrectomy secondary to Metasteses of the Cancer. He is *currently bed ridden, requiring special home* care which Ms. Vega is providing.

On psychiatric examination of Ms. Vega, I find her to be very depressed with suicidal ideation. At times, she hears voices telling her to jump through the window because she cannot take it anymore. She feels overwhelmed [sic] with the idea that she has to take care of her husband, but most importantly, that she does not have the financial means to take care of basic necessities for herself and her husband's living.

5. The eligibility requirements for Supplemental Security Income, see note 2, *supra*, are identical to the definition set forth in the text. See 42 U.S.C. § 1382c(a)(3)(A), (B). Therefore, the A.L.J. did not find it necessary to make separate findings of the plaintiff's qualifications for benefits under each program.

572 F.2d at 912. In assessing a claim of disability, four factors are to be considered: (1) objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain and disability testified to by the claimant; and (4) the claimant's age, educational background and work experience. *Marcus v. Califano, supra*, at p. 26, n.2; *Bastein v. Califano, supra*, 572 F.2d at 912. The court will consider each of these factors *in seriatim*, combining the first two for convenience.

## I. *Medical Facts and Medical Opinions Based on Such Facts*

Dr. Dizon reported that he had been treating plaintiff's "complaints" for angina pectoris, hypertension, bronchial asthma and chronic dyspepsia. Even assuming, for plaintiff's benefit, that Dr. Dizon's report can be read as diagnoses of these various conditions, "the mere presence of a disease or medically determinable impairment does not automatically entitle a claimant to . . . disability insurance benefits under the Social Security Act." *Gotshaw v. Ribicoff*, 307 F.2d 840, 844 (4th Cir. 1962). Dr. Dizon, who had been treating plaintiff for four years, did not believe that his clinical findings indicated the need for plaintiff to curtail her physical activity. Dr. Dizon's suggestion that plaintiff should be given "the benefit of the doubt," was only a recommendation for the A.L.J.'s consideration rather than a "treating physician's expert opinion" binding on the Secretary. *Cf., Eiden v. Secretary of H.E.W.*, 616 F.2d 63 (2d Cir., 1980); *Alvarado v. Califano*, 605 F.2d 34 (2d Cir. 1979). Dr. Balinberg catalogued plaintiff's complaints, which paralleled those listed in Dr. Dizon's report to a large extent. The results of the extensive clinical tests were unremarkable.

Dr. Balinberg found no clinical abnormalities; in particular, he stated that pulmonary function studies were within normal limits.[6] Dr. Reriberg corroborated the other physicians' observations but added nothing to assist plaintiff in meeting her burden in establishing disability.[7] Dr. Reriberg also commented on plaintiff's responsibility for the care of her husband.

Finally, Dr. Pena's opinion substantiated the conclusions of the other physicians who likewise failed to diagnose a cardiac condition. He described her asthmatic condition as worsening but only to the extent that she suffered severe attacks once a month. He remarked again on her husband's condition, and finally, although diagnosing arthritis, observed no severe restriction of movement. Plaintiff did not complain about debilitating effects of her treatment and surgery at Lincoln Hospital, nor do the hospital records show any complications.

Plaintiff argues that Dr. Clarke's report established a disabling psychiatric condition, and that it was error for the Appeals Council to affirm the A.L.J.'s decision rather than to remand in light of the report. Dr. Clarke's report, however, was substantially devoted to a description of plaintiff's husband's illness. Although the report indicated that her predicament had put plaintiff under a severe strain, "absent a functional impairment of such severity to preclude substantial gainful activity, a mere presence of a mental disturbance is not disabling per se." *Jenny v. Califano*, 459 F.Supp. 170, 173 (D.Neb.1978) (citation omitted). The Appeals Council properly acknowledged consideration of the report before making a final determination. *See Memoli v. Califano*, 463 F.Supp. 578, 584 (S.D.N.Y.1978). The A.L.J., while sympathetic to plaintiff's plight, correctly deter-

---

**6.** In spite of Dr. Balinberg's ultimate finding that the pulmonary function studies were normal, plaintiff alleges that the test results establish an impairment at a level of severity sufficient to preclude her from engaging in gainful activity. See 20 CFR 404.1506 Appendix at 3.03, Table I. A person of plaintiff's height is deemed disabled if the FEV and MVV are equal to or less than 1.1 and 35 respectively. The record shows that plaintiff's FEV was well within normal limits at 1.44. Her MVV was

34.8, a negligible fraction below the disability score of 35. However, plaintiff overlooks the fact that the Regulation requires *both* the FEV *and* MVV to be equal to or below the value specified. Since the FEV score does not satisfy this standard, § 3.03 is inapplicable.

**7.** See 42 U.S.C. § 423(d)(5), setting forth plaintiff's burden in establishing disability. See also *Storyk v. Secretary of Health Ed. and Welfare*, 462 F.Supp. 152, 156 (S.D.N.Y.1978).

mined that plaintiff could not qualify for disability benefits merely because she was essential to her husband's care. Moreover, plaintiff's apparent ability to care for her husband undercuts her current claim of disability. See *Italiano v. H.E.W.*, 458 F.Supp. 982 (E.D.N.Y.1978), *aff'd,* 603 F.2d 213 (2d Cir. 1979).

In sum, the medical records present a composite picture of a woman suffering from a variety of conditions, none of which, viewed singly or cumulatively, qualify the plaintiff for disability benefits. The reports present conflicting evidence of the severity and frequency of her asthma attacks. Dr. Balinberg's report in June 1977 described five to six attacks per week, lasting an hour each. Dr. Pena submitted a report in November stating that her condition was *worsening* to a point where attacks occurred once a month. Plaintiff's own testimony before the A.L.J. presented yet another description of attacks; she stated that they lasted about ten minutes, and occurred primarily in the winter. Significantly, only Dr. Pena concluded that plaintiff could not work for a living or would have to curtail her activity. His statement, viewed in the context of the overall report is not determinative.[8] Considering his brief statement about plaintiff's asthma, followed by his observation of her husband's illness, it is not unlikely that his conclusion resulted from the latter condition. Although the Second Circuit has frequently stated, "when no contradictory evidence is presented, a treating physician's expert opinion is binding on the Secretary," *Eiden v. Secretary of H.E.W.*, 616 F.2d 63, 64 (2d Cir., 1980), this court does not find that the A.L.J. erred in rejecting the uncorroborated recommendation of Dr. Pena.

## II. Plaintiff's Subjective Evidence of Pain or Disability

It is well settled law that the A.L.J. must consider the plaintiff's subjective evaluations of her own condition. *Marcus v. Califano, supra; Mejias v. Social Security Administration,* 445 F.Supp. 741 (S.D.N.Y. 1978); *Deyo v. Weinberger,* 406 F.Supp. 968 (S.D.N.Y.1975). While it is within the A.L.J.'s province "to reject such statements, weighing them against the other evidence in the record and keeping in mind the interest and credibility of the witnesses, . . . it is error for the A.L.J. to fail to consider expressly such subjective complaints." *Spicer v. Califano,* 461 F.Supp. 40, 47–48 (N.D. N.Y.1978). The record must also show how much weight has been attributed to various items of evidence, including the applicant's subjective description of her condition. *Marcus v. Califano, supra; Dunbar v. Califano,* 454 F.Supp. 1261 (W.D.N.Y.1978).[9]

In the case at bar, the A.L.J. clearly articulated her reasons for discrediting plaintiff's characterization of the severity of her illnesses. Although plaintiff alleged that she could not work because of her asthma and hay fever, she apparently had never required hospitalization or emergency room treatment. Therefore, a finding that the conditions were under control was not unreasonable. Plaintiff further testified

---

**8.** Compare this situation with *Mejias v. Social Sec. Admin.,* 445 F.Supp. 741 (S.D.N.Y.1978) in which the claimant alleged a disabling asthma condition. The court upheld the agency's determination that plaintiff therein was not disabled within the meaning of the statute based on the finding that the claimant responded to treatment although, unlike the plaintiff herein, he had been hospitalized several times for asthma. The court held that the A.L.J. properly disregarded a letter from plaintiff's treating physician stating that the "plaintiff's condition had deteriorated to the point where he could no longer work," since the letter was "conclusory and unsubstantiated by any medical reports or data." *Id.* at 743.

**9.** *Marcus v. Califano* was decided subsequent to the commencement of this action. The Second Circuit reversed the district court's affirmance of the Secretary's denial of benefits. The Court held that although the A.L.J. could properly discredit claims of severe pain, based on consideration of objective medical evidence, and the claimant's testimony and demeanor, it was error to disregard a subjective claim of pain on the ground that objective clinical findings did not establish a cause for such intense pain. The A.L.J. in *Marcus* provided no explanation for discrediting the claimant's description of her pain in the face of medical evidence of a painful condition. The record before the A.L.J. in the instant case, however, was devoid of evidence supporting severe pain or disability.

that her medication relieved her symptoms within five minutes. Although testifying that the arthritic pain and calluses on her feet prevented her from climbing stairs or walking more than a half block, plaintiff was able to take a train to the hearing. The A.L.J. also elicited the following testimony:

"Q. Now, what gives you the backache?

A. Arthritis. I feel that my hands are like stiff.

Q. Do you realize you just moved both your hands very easily, Mrs. Vega?

A. Well, the problem is that when I want to, I want to get up or stand up is when I feel more uncomfortable on my, on my legs."

The A.L.J. stated in her decision: "some comment is in order as to the claimant [sic] demeanor at the hearing. She took off her shoe to show the A.L.J. her calluses but there was no swelling noted. She ambulated freely, had free movement of her hands and arms and appeared to have no difficulty in sitting and standing." The A.L.J. also observed that plaintiff was considerably overweight, a fact noted by her physicians, and concluded that her excess weight might "be a factor in the shortness of breath that she alleges." It is not unlikely that the A.L.J. inferred that plaintiff's claim was related to the illness of her husband and her obligations at home. Indeed, the A.L.J., in her decision, specifically alluded to his illness as a "significant factor in this case."

Despite these explicit findings, plaintiff argues that *Ber v. Celebrezze*, 332 F.2d 293 (2d Cir. 1964) supports her position that the A.L.J. committed reversible error in discrediting plaintiff's testimony absent any substantial evidence directly refuting the applicant's allegations of pain and limitation. This court disagrees. In the *Ber* case, the claimant had submitted numerous medical reports confirming her intense pain and disability. Her various doctors made the following comments: "Pt. has severe pains in cervical spine radiating to shoulders . . . She is in constant pain and is completely disabled." Another doctor reported, "intense pain in the neck with marked limitation . . . constant and severe pains, incapacity to sleep, incapacity to work . . ." *Ber, supra,* 332 F.2d at 296–297. Significantly, the court noted that of all the doctors, "not one of them . . . intimated that he doubted in any way the truth of her claims." *Ber, supra,* 332 F.2d at 299. In the case presently before the court, the medical record defies a finding of limitation or disability and is contradicted only by plaintiff herself. "If a claimant could, as a matter of law, overcome the effect of what would otherwise be substantial evidence of continued ability to work by his own testimony as to his condition, the Secretary would rarely if ever be justified in denying benefits." *Reyes Robles v. Finch,* 409 F.2d 84, 87 (1st Cir. 1969).

This court finds that the A.L.J. considered plaintiff's subjective testimony, had ample reason to discredit it, and clearly set forth her reasons. *Marcus v. Califano, supra, Dunbar v. Califano, supra,* 454 F.Supp. at 1267.[10] "The credibility of witnesses is a matter within the sole province of the hearing examiner to determine, and where, as here, there is evidence to support the examiner's determination, it would be improper for a reviewing court to parse the cold record in search of a different result." *Deyo v. Weinberger,* 406 F.Supp. 968, 974 (S.D.N.Y.1975).

*Tyler v. Weinberger,* 409 F.Supp. 776 (E.D. Va.1976), cited by plaintiff is inapposite. In *Tyler,* the A.L.J. denied a claim for benefits because the claimant did not grimace or otherwise act as though he were in pain at the hearing, despite medical evidence concluding that claimant was totally disabled. In reversing the final decision of the Secretary, the court held that a "sit and squirm" test is improper because it "may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising their right to appear before an

---

**10.** Plaintiff argues that the A.L.J. discredited plaintiff's testimony solely because plaintiff did not appear to suffer from universal symptoms of pain such as "significant limitation in motion of painful joints, muscle spasm, weight loss, [and] pallor . . ." Thus, according to plaintiff, the A.L.J. improperly interposed herself as a medical expert. The court does not agree with either premise. The A.L.J. specifically acknowledged that individuals react differently to pain, and listed certain symptoms as those which even a lay person would recognize.

### III. Claimant's Age, Educational Background and Work Experience

It is abundantly clear from the record that plaintiff's former employment as a chambermaid, requiring exposure to dust, heavy exertion and constant mobility was unsuitable for her in view of her physical condition. "The burden [then] shift[ed] to the government to show that plaintiff [was] able to perform other work existing in the national economy." *Tyler v. Weinberger,* 409 F.Supp. 776, 786 (E.D.Va.1976), *citing, Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975); *Pelletier v. Secretary of H.E.W.,* 525 F.2d 158 (1st Cir. 1975).

The testimony of the vocational expert established plaintiff's potential for employment in view of her age, education and previous experience. The A.L.J. presented two hypotheticals to the expert, one based entirely on plaintiff's subjective complaints, and the other adjusted to accurately reflect plaintiff's limitations as substantiated by the medical records. Based on the second set of considerations, the expert concluded that sedentary work, in any one of several different industries would be available and suitable. The vocational expert considered plaintiff's language skills in assessing plaintiff's employability and focused on situations requiring limited communication skill.[11] Furthermore, plaintiff worked for seven years in a hotel and was able to function in an atmosphere requiring even more fluency than the sedentary jobs described by the vocational expert.

The court concludes that there was substantial evidence upon the record as a whole to support the Secretary's determination that plaintiff was not prevented by her impairments from engaging in substantial gainful employment. Finally, the court cannot agree with plaintiff that she was denied a fair hearing. The record of the proceedings demonstrates that the A.L.J. conducted the hearing fairly and conscientiously in order to protect plaintiff's rights. The defendant's motion is granted. Let the Clerk enter judgment dismissing the complaint.

So ordered.

---

[A.L.J.] for fear that they may not appear to the unexpert eye to be as bad as they feel." *Tyler v. Weinberger, supra,* 409 F.Supp. at 789. In the present case, the A.L.J.'s observations were corroborated by the objective medical facts and furthermore, the A.L.J. described symptoms of pain which a claimant would be unable to feign.

11. Plaintiff argues that a finding of disability is mandated according to new regulations promulgated under the Social Security Act. See 43 Fed.Reg. 55,349–79 (Nov. 28, 1978). Although the regulations did not become effective until February 2, 1979, plaintiff suggests that the regulations are fully applicable based upon her interpretation of the introductory language.

See 43 Fed.Reg. at 55,349. Even assuming that plaintiff's interpretation of that language is correct, she would still not be considered disabled. Rule 201.17, upon which plaintiff would rely, provides that a claimant between the ages of 45 to 49, with severe medically determinable impairments, who is *illiterate* or *unable to communicate in English* and whose previous work experience is either unskilled or non-existent, must be found to be disabled. 43 Fed.Reg. at 55,368 (emphasis added). According to Revised Reg. § 404.1507 (43 Fed.Reg. at 55,364) which distinguishes between levels of education, plaintiff would not be considered illiterate and accordingly not considered disabled pursuant to Rule 201.17.