Joseph McANDREW, Plaintiff,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, Defendant.

No. 82 Civ. 2680 (RJW).

United States District Court, S.D. New York.

April 20, 1983.

Meltzer & Fishman, New York City, for plaintiff; Stanley F. Meltzer, New York City, of counsel.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., and Annette H. Blum, Regional Atty., Region II, Dept. of Health and Human Services, New York City, for defendant; Marc H. Rosenbaum, Asst. U.S. Atty., and Michael Noorigian, Asst. Regional Atty., New York City, of counsel.

ROBERT J. WARD, District Judge.

This is an action under section 205(g) of the Social Security Act (the "Act") as amended, 42 U.S.C. § 405(g), for judicial review of a final decision by the Secretary of Health and Human Services (the "Secretary")[1] denying plaintiff's application for disability insurance benefits. The Secretary held that plaintiff failed to demonstrate that he suffered from a "disability" within the meaning of the Act. Both plaintiff and defendant move for judgment on the pleadings pursuant to Rule 12(c), Fed.R. Civ.P. For the reasons stated hereinafter, plaintiff's motion is granted in part, defendant's motion is denied, and the case is remanded to the Secretary.

### Background

Plaintiff, currently forty-two years of age, has a college education and has nearly completed the course work necessary for a master's degree. From 1965 to 1979 he was employed as a police officer by the City of New York. His impairments arise from injuries sustained in a violent assault by a prisoner in a jail cell on April 26, 1979. Plaintiff's claim is based on injuries to his right arm, diagnosed as ulnar and radial nerve damage, and severe reactive depression.

Plaintiff first applied for disability insurance benefits on July 24, 1980. After his application was denied initially and on reconsideration, he filed a timely request for an administrative hearing, which was held on July 1, 1981. The administrative law judge, Gerald Sheindlin (the "ALJ"), found that plaintiff was not disabled, and on March 30, 1982 that finding became the final decision of the Secretary when it was adopted by the Appeals Council.

### Discussion

The legal principles that govern the Court's decision on the instant motions are

---

1. Secretary Heckler has been substituted as defendant in this action in place of former Secretary Richard S. Schweiker, pursuant to Rule 25(d)(1), Fed.R.Civ.P.

well settled. "Disability" is defined in the Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The mere presence of an impairment is not disabling within the meaning of the Act. Rather, a person may be determined to be under a disability only if his or her impairment is of such severity that the claimant is not only unable to do his or her previous work, but cannot engage in any kind of substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The initial burden of proving disability is on the claimant. 42 U.S.C. § 423(d)(5); *see Schauer v. Schweiker,* 675 F.2d 55 (2d Cir.1982); *Carter v. Schweiker,* 649 F.2d 937, 940 (2d Cir.1981); *Gold v. Secretary of HEW,* 463 F.2d 38, 41 (2d Cir.1972). The claimant satisfies this burden by making out a *prima facie* case, that is, by showing that his or her impairment prevents return to his or her prior employment. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980); *Bastien v. Califano,* 572 F.2d 908, 912–13 (2d Cir.1978). The burden then shifts to the Secretary, who must produce evidence to show the existence of alternative substantial gainful work that exists in the national economy that the claimant could perform. *Parker v. Harris, supra,* 626 F.2d at 231; *Bastien v. Califano, supra,* 572 F.2d at 912–13.

In reaching a conclusion as to disability, both objective and subjective factors are to be considered. These include objective medical facts, diagnoses or medical opinions based on such facts, subjective evidence of pain or disability testified to by the claimant or other witnesses, and the claimant's educational background, age, and work experience. *Rivera v. Harris,* 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano, supra,* 572 F.2d at 912; *Gold v. Secretary of HEW, supra,* 463 F.2d at 41 n. 2. These factors need not be given equal weight. The expert opinion of the claimant's treating physician is entitled to particular weight. *Eiden v. Secretary of HEW,* 616 F.2d 63, 64 (2d Cir.1980); *Alvarado v. Califano,* 605 F.2d 34, 35 (2d Cir.1979).

The Secretary has the duty of making the determination of disability under the principles set out above. It is not the function of this Court, which sits in the present context as a reviewing court, to determine *de novo* whether the claimant is disabled. Assuming the Secretary has applied proper legal principles, judicial review is limited to an assessment of whether the findings of fact are supported by substantial evidence. If they are so supported, they are conclusive. 42 U.S.C. § 405(g). *See Rivera v. Harris, supra,* 623 F.2d at 216; *Bastien v. Califano, supra,* 572 F.2d at 912; *Gold v. Secretary of HEW, supra,* 463 F.2d at 41. "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). *See generally Parker v. Harris, supra,* 626 F.2d at 230–32.

Applying these principles to the instant case, the Court concludes that not all aspects of the decision of the Secretary are supported by substantial evidence, and that the case must be remanded. Two of the findings by the ALJ that are now challenged by plaintiff are supported by substantial evidence, and are affirmed herein. Those are: 1) that plaintiff's physical impairment is not, by itself, disabling, and 2) that plaintiff's pain is not sufficiently severe to be disabling. On the other hand, two of the ALJ's findings are not supported by substantial evidence in the record, and therefore must be reversed. Those are: 1) that the claimant has the residual functional capacity to perform "sedentary work," as defined by 20 C.F.R. § 404.1567(a), and 2) that plaintiff's psychiatric condition would "not significantly affect" his residual functional capacity to perform sedentary work.

Taken together, these conclusions persuade the Court that no single rule found in the Secretary's Medical-Vocational Guidelines, 20 C.F.R. Part 404(P), App. 2, is applicable to plaintiff. Therefore, his case cannot be disposed of through mechanical application of those guidelines, but must be evaluated on an individualized basis.

In his decision of December 12, 1981, the ALJ found that plaintiff is unable to perform his past relevant work as a police officer, due to the injuries to his right arm. That conclusion is amply supported by the evidence, and is not challenged by either party before the Court. As noted by both this Court and the ALJ, that finding shifts the burden of proof to the Secretary, who must show the existence of substantial gainful work that plaintiff can perform. *See supra* at 1230.

The first half of the ALJ's inquiry into whether plaintiff can perform alternative work consisted of an evaluation of plaintiff's physical impairment. The Court accepts as supported by substantial evidence the ALJ's finding that plaintiff's physical impairment is not, by itself, disabling. Plaintiff correctly points out that the record is replete with evidence indicating that his use of his right arm and hand is limited. Nonetheless, even if the evidence indicated, as it does not, that plaintiff's right arm were totally useless, a finding of disability would not be required. Both the case law [2] and the Secretary's regulations [3] indicate that the loss of use of one arm or hand is not, by itself, regarded as a disability within the meaning of the Act.[4] Such a conclusion is all the more clear where, as here, the claimant is both highly educated and, as is defined by the Secretary, a "younger person." 20 C.F.R. § 404.1563(b); *see* 20 C.F.R. Part 404(P), App. 2, § 201.00(h).

Plaintiff makes the additional argument that he suffers from severe and disabling pain in his elbow, arm, and hand. It is well settled that subjective pain may serve as the basis for establishing disability. *Aubeuf v. Schweiker,* 649 F.2d 107, 112–13 (2d Cir.1981); *Marcus v. Califano,* 615 F.2d 23, 27–28 (2d Cir.1979); *see also Gallagher v. Schweiker,* 697 F.2d 82, 84 (2d Cir.1983). In the instant case, however, the ALJ concluded that McAndrew's pain was not sufficiently severe to be disabling. That conclusion is supported by substantial evidence in

2. *See, e.g., Knott v. Califano,* 559 F.2d 279, 281–82 (5th Cir.1977); *Torske v. Richardson,* 484 F.2d 59, 60 (9th Cir.1973), *cert. denied,* 417 U.S. 933, 94 S.Ct. 2646, 41 L.Ed.2d 237 (1974); *Wright v. Gardner,* 403 F.2d 646 (7th Cir.1968); *Ortiz v. Secretary of HEW,* 472 F.Supp. 5, 6–7 (E.D.N.Y.1979); *Jenny v. Califano,* 459 F.Supp. 170, 171–72 (D.Neb.1978); *Wright v. Weinberger,* 391 F.Supp. 390, 393 (D.Md.1975); *Gonzalez v. Secretary of HEW,* 331 F.Supp. 865 (D.P. R.1971).

3. The regulations promulgated by the Secretary contain a "Listing of Impairments," 20 C.F.R. Part 404(P), App. 1, that contains those "impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525(a). McAndrew's physical impairment is covered by § 1.09 of the Listing of Impairments, which lists as a disabling impairment the "Amputation or anatomical deformity of (i.e., loss of major function due to degenerative changes associated with vascular or neurological deficits ...) ... [b]oth hands; or ... [o]ne hand and one foot." Therefore, the loss of use of one hand is not a sufficient impairment, without more, to be considered a "disability" as defined by the Secretary's regulations.

4. Plaintiff places great emphasis on the fact that his treating physician for his physical impairment, Dr. Lester Lieberman, noted at one point that, "I feel that [plaintiff] does have a total disability." Transcript at 171. It does not appear, however, that Dr. Lieberman was using the term "disability" here as it is defined in the Act, i.e. "inability to engage in any substantial gainful activity...." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(d)(2)(A). He recorded his observation shortly before the New York City Police Department was to issue its ruling as to whether plaintiff was entitled to a disability pension from the Police Pension Fund. Several other doctors who examined plaintiff prior to the ruling of the Police Department clearly used the term "disability" to mean only that plaintiff was no longer capable of working as a police officer. Transcript at 177, 186; *see also* Transcript at 188. The only definition of the term "disability" currently of interest to the Court is the definition prescribed by the Act. Furthermore, the question of law and fact as to whether plaintiff's condition fulfills that definition is ultimately to be determined by the Secretary based on the evidence in the record, not by plaintiff's physicians.

the record. The ALJ's opinion of December 12, 1981 indicates that he considered plaintiff's own testimony as to his pain, as well as the testimony of plaintiff's wife and doctors. The ALJ found that plaintiff's own testimony that his pain was disabling was not credible or consistent. This finding was in part based on the observations that plaintiff has widely increased his range of activities since the months following his injury, that he has markedly reduced the amount and strength of medication he takes for pain, and that he is no longer undergoing regular treatment or therapy. While the medical reports in the record contain a number of references to plaintiff's pain, those reports are by no means unequivocal on the question of whether plaintiff's pain is disabling. In any event, it is not for this Court but for the Secretary to evaluate the evidence, consider the credibility of witnesses, and draw permissible inferences from the evidence. *See Richardson v. Perales,* *supra,* 402 U.S. at 399, 91 S.Ct. at 1426; *Rodriguez v. Secretary of HHS,* 647 F.2d 218, 222 (1st Cir.1981); *Miles v. Harris,* 645 F.2d 122, 124 (2d Cir.1981); *Grant v. Richardson,* 445 F.2d 656 (5th Cir.1971). The Secretary has performed that function in the instant case, finding that plaintiff's pain is not so severe as to be disabling, and this Court now holds that that finding is supported by substantial evidence in the record.

The aspect of the ALJ's evaluation of plaintiff's physical impairment that this Court cannot accept, however, is the finding that plaintiff is capable of performing the full range of work defined at 20 C.F.R. § 404.1567(a) as "sedentary work." *See* Findings Nos. 6, 11, Transcript at 17. As consistently indicated by the evidence, and as noted by the ALJ, plaintiff's physical impairment "severely restricts" the functioning of his right arm and hand. That restriction affects plaintiff's ability to perform both gross and fine manipulations. Given that the ALJ reached such a determination, the Court is at a loss to discern how the plaintiff can be considered capable of performing the full range of activities defined as "sedentary." That many if not most sedentary jobs require the repetitive use of both hands is beyond peradventure.[5] Consequently, the Court must reject the ALJ's finding that plaintiff can perform sedentary work, as not supported by the evidence.[6]

If plaintiff's physical impairment were the only basis of his claim for disability benefits, it would not be necessary to remand this case. As noted above, the ALJ's factual evaluation of plaintiff's physical

---

**5.** *See, e.g.,* 20 C.F.R. Part 404(P), App. 2, § 201.00(h), in which the Secretary offers the following example to illustrate the appropriate use of the Medical-Vocational Guidelines:

Example 1: An individual under age 45 with a high school education can no longer do past work and is restricted to unskilled sedentary jobs because of a severe medically determinable cardiovascular impairment (which does not meet or equal the listings in Appendix 1). *A permanent injury of the right hand limits the individual to sedentary jobs which do not require bilateral manual dexterity. None of the rules in Appendix 2 are applicable to this particular set of facts, because this individual cannot perform the full range of work defined as sedentary.* Since the inability to perform jobs requiring bilateral manual dexterity significantly compromises the only range of work for which the individual is otherwise qualified (i.e., sedentary), a finding of disabled would be appropriate.

(emphasis supplied).

**6.** In relying on Rule 201.29 of the Secretary's Medical-Vocational Guidelines, 20 C.F.R. Part 404(P), App. 2, the ALJ also makes an implicit finding that plaintiff possesses skills that are transferable to some new job. However, the ALJ does not address the evidentiary basis for that conclusion, as he is generally required to do under the Act. *See Berry v. Schweiker,* 675 F.2d 464, 469 (2d Cir.1982); *Santiago v. Schweiker,* 548 F.Supp. 481, 485 (S.D.N.Y. 1982). This omission appears to have been the result of the ALJ's overlooking the fact that his application of Rule 201.29 implied a finding of transferable skills; since the ALJ also held that, "In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material." Finding No. 10, Transcript at 17. In light of Finding No. 10, the ALJ should properly have applied Rule 201.28, which applies when a claimant's skills are not transferable. Ultimately, of course, the issue is rendered moot in this case by the Court's rejection of the Secretary's finding that plaintiff can perform the full range of sedentary work.

condition is supported by substantial evidence; and it is plain that that physical condition, as properly evaluated by the ALJ, is not by itself disabling. *See supra* at 1231–32. Therefore, if plaintiff's claim were based solely on his physical condition, the ALJ's error in finding plaintiff capable of performing the full range of sedentary work would be harmless; it would not undermine the Secretary's ultimate decision, in accordance with the appropriate regulations, that there exist jobs in the national economy that plaintiff can perform.

Plaintiff's claim, however, is based on both his physical impairment and a complaint of severe reactive depression. As the ALJ recognized, plaintiff's psychological condition must be evaluated in conjunction with plaintiff's physical impairment. *See* 20 C.F.R. § 404.1522. It may well be that the two conditions taken together do not render plaintiff disabled. That is a decision for the Secretary which the Court does not now address. The Court cannot accept on this record, however, a finding that plaintiff's psychological condition is so minor as to have no significant effect on his ability to perform substantial gainful activity. Such a finding is not supported by the evidence in the record.[7]

Plaintiff's psychological condition was evaluated and diagnosed by two physicians. Dr. Arthur M. Meisel diagnosed plaintiff as suffering from "Major Depression (Dysthymic Response) with strong paranoid preoccupations," and concluded that plaintiff's condition could be expected to last well in excess of 12 months. Exhibit 20. He characterized the limitations on plaintiff's ability to "respond to customary work pressures" as "severe," and made a variety of other similar conclusions based on his examinations of plaintiff. *Id.* Dr. Joseph

Schechtman also examined plaintiff in order to evaluate, *inter alia,* plaintiff's psychological condition. His final diagnosis was that plaintiff suffered from "moderately severe reactive depression." Exhibit 19; *see also* Exhibit 24. He characterized the limitation on plaintiff's ability to "respond to customary work pressures" as "moderately severe." Exhibit 24.

Although the two psychiatrists differed slightly in their estimates of how seriously plaintiff's reactive depression interferes with his ability to handle work-related demands, both psychiatrists agreed that there is significant interference. Both psychiatrists also supported their diagnoses with clinical findings. The ALJ appeared to have acknowledged, in his questioning of Dr. Meisel at the July 1981 hearing, that plaintiff suffered at least some significant interference with his ability to perform certain jobs as a result of his reactive depression. When the ALJ's questioning of Dr. Meisel turned to the specific issue of plaintiff's ability to successfully function in a job, the ALJ directed his questioning solely to whether plaintiff could maintain a job of a "low stress nature." Transcript at 50–52. In fact, Dr. Meisel repeatedly asserted that he did not consider plaintiff capable of even "low stress" work. More importantly, however, the ALJ's questioning was not directed at whether plaintiff suffered no significant limitation whatever from his reactive depression, but only at whether the depression was so severe as to disable plaintiff from performing even low stress sedentary work.

An ALJ is of course free, and indeed required, to evaluate the credibility of witnesses before him, and reject the testimony of those he reasonably concludes are not credible. *See, e.g., Richardson v. Perales, supra,* 402 U.S. at 399, 91 S.Ct. at 1426;

---

7. While there may be some ambiguity in a finding that plaintiff's reactive depression does not "significantly affect" his ability to perform sedentary work, the Court must construe that finding to mean that the Secretary considers there to be no sedentary job that plaintiff cannot perform by reason of his depression. The Secretary could not otherwise rely on Table No. 1 of the Medical-Vocational Guidelines, 20 C.F.R. Part 404(P), App. 2, since that table applies only when a claimant is capable of performing the full range of occupations defined as "sedentary." *See* 20 C.F.R. Part 404(P), App. 2, §§ 200.00(a), 200.00(d), 200.00(e)(2), 201.00(h).

*Miles v. Harris, supra,* 645 F.2d at 124; *Parker v. Harris, supra,* 626 F.2d at 231. Here, however, the ALJ has extended that function to extremes, without an adequate evidentiary basis for so doing. In holding that plaintiff's ability to work is not affected by his reactive depression, *see supra* note 6, the ALJ not only rejected the testimony of plaintiff and his wife, but also the reports of the only two psychiatrists who examined plaintiff. Those psychiatrists are in uncontradicted agreement that plaintiff's reactive depression has at least some significant effect on plaintiff's ability to work.

The basis of the ALJ's decision to reject this body of evidence is obscure. His basis appears primarily to be what the ALJ characterizes as "inconsistencies" in the diagnoses of the psychiatrists and in the testimony of plaintiff. Neither of those sets of "inconsistencies," however, supports the ALJ's conclusion. As to the reports from Dr. Meisel, the ALJ notes that Dr. Meisel once described plaintiff as having a history of "soft" paranoia, while at another point Dr. Meisel diagnosed plaintiff as having "strong" paranoia. While this and other noted "inconsistencies" may support a finding that plaintiff is only moderately impaired by his depression, the Court can discern no substantial basis for the ALJ's conclusion that plaintiff suffers *no* significant impairment from that depression.

As to the ALJ's evaluation of plaintiff's own testimony, it generally appears to be within the proper bounds of the ALJ's duties as fact finder. One aspect of that evaluation, however, troubles this Court. The ALJ seems particularly skeptical of plaintiff's claim that he has not sought regular psychiatric treatment because of the associated expense. The ALJ twice spells out the reasons for his skepticism as 1) the size of plaintiff's disability pension from the police department, 2) the make and model of plaintiff's automobile, and 3) the fact that plaintiff has been able to pay for four medical examinations and the personal appearance of Dr. Meisel in bringing the instant disability claim. In light of plaintiff's obvious financial stake in the outcome of his claim, consideration of the third reason hardly supports the conclusion the ALJ draws from it. As to all three cited reasons, and particularly to the ALJ's repeated mention of plaintiff's automobile, the Secretary is reminded that, unlike Supplemental Security Income, disability insurance benefits are not subject to a financial means test.

██ To summarize, the Court concludes that by reason of his physical impairment plaintiff is not capable of performing the full range of activity defined by the Secretary as "sedentary work." In addition, plaintiff's psychological condition further reduces the range of jobs that plaintiff can perform. As a practical matter, these conclusions mean that the Secretary's burden of proving that plaintiff can perform substantial gainful activity cannot be met by mechanical application of the tables found at 20 C.F.R. Part 404(P), App. 2.[8] The Secretary's own regulations acknowledge that such application may sometimes be inappropriate: "If an individual's specific profile is not listed within Appendix 2, a

---

**8.** In response to the arguments made by the Secretary in the instant proceeding, the Court notes that its holding does not rely upon, or even reach, the central holding in *Campbell v. Secretary of HHS,* 665 F.2d 48 (2d Cir.1981), *cert. granted,* 457 U.S. 1131, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982), *argued sub nom. Heckler v. Campbell,* —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). In *Campbell,* it was undisputed that a specific rule promulgated by the Secretary in the Medical-Vocational Guidelines, 20 C.F.R. Part 404(P), App. 2, is applicable to that plaintiff. The Court of Appeals in *Campbell* then went further to hold that the Secretary's guidelines did not "provide adequate evidence of a claim-

ant's ability to perform a specific alternative occupation." 665 F.2d at 53.

In the instant case, however, this Court rejects the finding of the ALJ that a particular rule promulgated by the Secretary in the Medical-Vocational Guidelines is applicable to plaintiff. As noted, this holding will presumably have the practical effect of requiring the Secretary to provide a listing of particular types of jobs suitable for plaintiff, as was required by the Court of Appeals in *Campbell. See* 665 F.2d at 54. The reasons for such a requirement in the instant case, however, differ significantly from those which prompted the Court of Appeals' holding in *Campbell.*

conclusion of disabled or not disabled is not directed." 20 C.F.R. Part 404(P), App. 2, § 200.00(d). Under circumstances in which "it is found that no specific rule applies, the rules still provide guidance for decisionmaking, such as in cases involving combinations of impairments." *Id.* The instant case is one in which no specific rule applies. Consequently, the Secretary must in this case identify some particular job or jobs that plaintiff can perform.

*Conclusion*

The Secretary's determination that plaintiff is not disabled is not supported by substantial evidence. Accordingly, plaintiff's motion is granted insofar as it seeks a remand, defendant's motion is denied, and the case is remanded to the Secretary for proceedings consistent with this decision. The action is dismissed, subject to being reopened by either party within a reasonable time following any further proceedings by the Secretary.

It is so ordered.